## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | |
|---|---|
| HARRIET E. ROBINSON, BILLY J. GARTIN, ) <br> TARA A. HOLT, JESSICA R. NEWSOME, ) <br> MELISSA J. SCOTT, SANDRA L. SPEAKES, ) <br> KELLY J. STOKLEY, AMIE G. TOLIVER, ) <br> and DANIEL G. WRIGHT, JR., on behalf of ) <br> plaintiffs and the class defined herein, ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **COMMUNITY HEALTH SYSTEMS, INC.,** ) <br> **HOSPITAL MANAGEMENT ASSOCIATES,** ) <br> **LLC, COCKE COUNTY HMA, LLC, FIRST** ) <br> **FINANCIAL INVESTMENT FUND** ) <br> **HOLDINGS, LLC, FIRST FINANCIAL** ) <br> **INVESTMENT FUND VI, LLC, BUFFALOE** ) <br> **& VALLEJO, PLC, and DOES 1-30,** ) <br> ) <br>     **Defendants.** ) | Civil Case No. _____ <br><br> Jury Trial Demanded |

---

## CLASS ACTION COMPLAINT

---

### INTRODUCTION

1.    This class action seeks to vindicate the rights of hundreds, if not thousands, of Tennessee residents who were patients in Tennessee hospitals and have been subjected to invasion of their right to privacy when private health information, including their name and address and other identifying information (PHI), was sold in violation of Tennessee state law, and is brought to recover damages for illegal activities prohibited by state law, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

2.    This class action arises out of:

A.   Defendant Community Health Systems, Inc.'s ("CHS") subsidiaries, including Defendant Hospital Management Associates, LLC ("HMA"), Defendant Cocke County HMA, LLC, d/b/a Newport Medical Center ("CCHMA"), and unidentified subsidiaries of CHS that are Tennessee hospitals (collectively "Creditors"), selling patients' PHI in violation of Tennessee state law's statutory right to privacy under Tenn. Code Ann. § 68-11-1503; and

B.   Defendants' First Financial Investment Fund Holdings, LLC (FFIF Holdings) and First Financial Investment Fund VI, LLC (FFIF VI) and other unidentified debt buyers (collectively "Debt Buyers"), and Buffaloe & Vallejo, PLC's (Buffaloe), collection agencies, law firms and individual attorneys (collectively "Debt Collectors") violations of the FDCPA and state law, including purchasing patients' PHI in violation of Tennessee state law's statutory right to privacy under Tenn. Code Ann. § 68-11-1503 and attempting to collect these debts by filing and serving collection lawsuits against the patients (collectively "FDCPA Defendants"),

all in their efforts to illegally collect consumer debts from Plaintiffs Harriet E. Robinson (Robinson), Billy J. Gartin (Gartin), Tara A. Holt (Holt), Jessica R. Newsome (Newsome), Melissa J. Scott (Scott), Sandra L. Speakes (Speakes), Kelly J. Stokley (Stokley), Amie G. Toliver (Toliver), and Daniel G. Wright, Jr. (Wright) (collectively "Plaintiffs"), and others similarly situated.

**JURISDICTION AND VENUE**

3.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367 for state law claims.

4.      Venue is proper, pursuant to 28 U.S.C. § 1391(b), in this District because a substantial part, if not all, of the acts or omissions giving rise to Plaintiffs' claims occurred here, Plaintiffs reside here, and Defendants transact business here.

**PARTIES**

5.      Each individually named Plaintiff is a natural person that resides in Cocke County, Tennessee, except for Gartin, who is a natural person that resides in Sevier County, Tennessee.

6.      CHS is a for-profit foreign corporation (Delaware) with a principal office at 4000 Meridian Blvd, Franklin, TN 37067-6325 that currently maintains Justin Pitt, 4000 Meridian Blvd, Franklin, TN 37067-6325, as its registered agent.

7.      HMA is a for-profit foreign limited liability company (Florida) not registered to do business in Tennessee with a principal office at 4000 Meridian Blvd, Franklin, TN 37067-6325 that currently maintains Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525, as its registered agent.

8.      CCHMA is a for-profit domestic limited liability company with a principal office at 4000 Meridian Blvd, Franklin, TN 37067-6325 that currently maintains Justin Pitt, 4000 Meridian Blvd, Franklin, TN 37067-6325, as its registered agent.

9.      FFIF Holdings is a for-profit foreign limited liability company (Delaware) not registered to do business in Tennessee with a principal office at 3091 Governors Lake Dr #500, Norcross, GA 30071-1135 that currently maintains The Corporation Trust Company, 1209 N Orange St, Wilmington, DE 19801-1120 as its registered agent.

10.     FFIF VI is a for-profit foreign limited liability company (Delaware) not registered to do business in Tennessee with a principal office at 3091 Governors Lake Dr #500, Norcross,

GA 30071-1135 that currently maintains The Corporation Trust Company, 1209 N Orange St, Wilmington, DE 19801-1120 as its registered agent, and is currently transacting business in Tennessee without a certificate of authority necessary to maintain a proceeding in any court in this state. **See Tenn. Code Ann. § 48-249-913(a).**

11.    Buffaloe is a professional limited liability company registered to do business in Tennessee with a principal office located at 44 Vantage Way, Ste 500, Nashville, TN 37228-1542 that maintains Joel Vallejo, 44 Vantage Way, Ste 500, Nashville, TN 37228-1542 as its registered agent.

## PLAINTIFFS' FACTUAL ALLEGATIONS

12.    Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

13.    Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14.    Creditors are entities who obtained PHI of Plaintiffs and others similarly situated when they were patients at hospitals, and then sold the PHI to Debt Buyers, including FFIF Holdings.

15.    FFIF Holdings is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly uses the mails and/or the telephone, and reports to credit reporting agencies, in its business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. FFIF Holdings operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including Tennessee, by credit reporting the alleged debts to credit reporting agencies. In fact, FFIF Holdings was acting as a debt collector, as defined in the FDCPA, as to the delinquent consumer debts it is attempting to collect from the Plaintiffs and others similarly situated.

16. FFIF VI is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly uses the mails and/or the telephone, in its business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. FFIF VI operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including Tennessee, by filing collection lawsuits against consumers as the named state court plaintiff. In fact, FFIF VI was acting as a debt collector, as defined in the FDCPA, as to the delinquent consumer debts it is attempting to collect from the Plaintiffs and others similarly situated.

17. Buffaloe is an agent of FFIF Holdings and FFIF VI, and its owners and employees are regularly engaged in collection of consumer debts owed or due or asserted to be owed or due another and attempt to collect the debts by using communications in the form of telephone calls, collection letters, collection lawsuits, judgment liens, and requests for the issuance of subpoenas, garnishments and levies on behalf of its clients, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

18. Defendants have alleged that the Plaintiffs and others similarly situated incurred obligations to pay money arising out of transactions in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and each obligation is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely debts for medical services originally owed by the Plaintiffs and others similarly situated to CCHMA and other hospitals in Tennessee.

19. After default, FFIF Holdings allegedly purchased the debts from an entity named Hospital Management Associates, LLC (HMA), then transferred ownership of the debt to FFIF VI,

which hired Buffaloe to assist it in collection of the alleged debts from the Plaintiffs and others similarly situated.

### *Collection Communications*

20.    A "communication" under the FDCPA means conveying the information regarding a debt directly or indirectly to any person through any medium.  15 U.S.C. § 1692a(2).

### *Collection Lawsuits*

21.    The FDCPA Defendants attempted to collect debts related to the Plaintiffs' PHI by having process servers serve civil summonses or alias civil summonses ("civil summonses") and sworn affidavits on Plaintiffs and others similarly situated (collectively "collection lawsuits").  **Copies of the collection lawsuits served on Plaintiffs are filed as collective exhibit 1 to this Complaint (hereinafter "Doc. 1-1").**

22.    The only way the FDCPA Defendants would be able to request service of the collection lawsuits on the Plaintiffs is if the Plaintiffs' PHIs were sold and purchased in violation of the Plaintiffs' Tennessee statutory right to privacy.

23.    The civil summonses served on Plaintiffs in the last year were prepared by Buffaloe.  **See Doc. 1-1.**

24.    The civil summonses served on Plaintiffs states the amounts allegedly owed to FFIF VI.  **See Doc. 1-1.**

25.    In response to the civil summonses being filed and served on them, Plaintiffs hired an attorney to represent them with respect to collection of debts related to their PHI.

26.    Plaintiffs' attorney attended the initial court hearing for the collection lawsuits and notified FFIF VI's state court attorney, Joel Vallejo, Plaintiffs had retained him with

respect to collection of the alleged debts, and that Plaintiffs disputed the debts because they did not think they owed them to FFIF VI.

27.   In response to the dispute, Mr. Vallejo requested Plaintiffs' attorney provide him an email regarding potential issues with the collection lawsuits filed against Plaintiffs.

28.   In response to Mr. Vallejo's request, on September 9, 2018, Plaintiffs' attorney sent Mr. Vallejo an email which stated Plaintiffs wanted more proof regarding the date of the medical services received, proof of the ownership of the alleged debt, including any contracts signed by Plaintiffs.

29.   In response to Plaintiffs' attorney's request for more proof regarding ownership of the debt, Mr. Vallejo provided Plaintiffs copies of Affidavits of Account (sworn affidavits). **See Doc. 1-1.**

30.   On information and belief, FFIF VI or one of its employees or agents prepared the sworn affidavits.  **See Doc. 1-1.**

31.   The sworn affidavits were allegedly signed by different persons in front of notaries and state:

    1.   That [the affiant] is a record keeper, [and] is the person in charge of the business records for FIRST FINANCIAL INVESTMENT FUND VI, LLC.

    2.   Attached hereto are true and exact copies of documents reflecting the transfer of ownership of this account from [HMA] to [FFIF VI].

32.   The sworn affidavits also state "[t]hat after the allowance of all credits and offsets", Plaintiffs owe various amounts and provides the date(s) of service.  **See Doc. 1-1.**

33.  Despite the representations by the affiants, no documents were attached to the sworn affidavits "reflecting the transfer of ownership of this account from [HMA] to [FFIF VI]." **See Doc. 1-1.**

34.  Also, in response to Plaintiffs' attorney's request, Mr. Vallejo provided Plaintiffs copies of Assignment and Bill of Sales (Bills of Sale) with different dates, which appears to be between HMA and FFIF Holdings and involve the assignment of accounts, but do not identify the debts alleged to be owed by Plaintiffs.  \The Bills of Sale refers to a "Schedule of Accounts", but no documents were provided to Plaintiffs showing what accounts are subject to the Bills of Sale.

35.  Additionally, in response to Plaintiffs' attorney's request, Mr. Vallejo provided the Plaintiffs copies of Affidavits of Authentication with different dates that were signed by different persons who, presumably, are employees or agents of FFIF Holdings.

36.  The Affidavits of Authentication state, among other things, that the "attached documents evidencing transfer of ownership of accounts from [HMA] (hereinafter Original Creditor) to Current Creditor [FFIF Holdings] on different dates [are] accurate and complete and makes reference to a list of the specific accounts acquired."

37.  No attached documents to the Affidavits of Authentication have been provided to Plaintiffs.

38.  Mr. Vallejo also provided documents titled "Conditions of Treatment and Admission" with attachments, which makes it clear that CCHMA is the original creditor, not HMA.

39.  Although a lot of the medical information is redacted in the additional documents, it is clear that Plaintiffs' PHI has been shared (divulged) by CCHMA and HMA to other entities.

40. No documents were provided showing the assignment and sale of the debt from the original creditor, CCHMA, or from FFIF Holdings to FFIF VI, the state court plaintiff.

### *Credit Reports*

41. Experian, Equifax and TransUnion ("CRAs") are each a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) that regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

42. After the collection lawsuits were served on the Plaintiffs, some obtained copies of credit reports from the CRAs which showed that FFIF Holdings was communicating information about the debts to each of the CRAs, updated in October 2018.

43. "Debt collection is performed through 'communication,' . . . 'conduct,' . . . or 'means'. These broad words suggest a broad view of what the Act considers collection . . . [I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

44. Each reporting of the alleged debt to one of the CRAs is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). *See Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); *See also Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); *accord Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection

with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

45. Credit reports obtained by some Plaintiffs' show that on September 10, 2018 or later, FFIF Holdings was still reporting that the owner of the alleged debts were entities named "1st Finl Investment Fund Holdings" or "First Fin Inv Fund Holdings" (FFIF Holdings), not FFIF VI, which information was communicated to Plaintiffs, CRAs, and anyone else who accessed Plaintiffs' credit reports.

46. These communications did not identify the true name of the entity reporting the alleged debts to the CRAS or state that the debts were disputed, and some state that Newport Medical Center is the original creditor, not HMA, and some state that FFIF Holdings is the original creditor, which it is not.

47. Each report by FFIF Holdings of the alleged debts to the CRAs after the collection lawsuits were filed and served on the Plaintiffs, including that FFIF Holdings was the creditor alleged to be owed the debts after they were transferred or assigned to FFIF VI, the names of the original creditors, and the amounts alleged to be owed, is a "communication" in an attempt to collect a debt from Plaintiffs, as that term is defined by 15 U.S.C. § 1692a(2).

## INVASION OF PRIVACY CLASS CLAIMS

48.   Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

49.   Tennessee law states, in pertinent part, that:

    **(a)**   <u>**(1) The name and address and other identifying information of a patient shall not be divulged, except for**</u>:

        (A)   Any statutorily required reporting to health or government authorities;

        (B)   Access by an interested third-party payer or designee, for the purpose of utilization reviews, case management, peer reviews, or other administrative functions;

        (C)   Access by health care providers from whom the patient receives or seeks care;

        (D)   If the patient does not object, any directory information, including only the name of the patient, the patient's general health status and the patient's location and telephone number. Directory information shall be released to all inquirers, only if the patient has been notified, upon admission to the hospital, of the patient's right to object to the information that may be released and has not objected; or, if the patient is in a physical or mental condition such that the patient is incapable of making an objection and the next of kin or patient representative does not come forward and object; and

        (E)   Any request by the office of inspector general or the Medicaid fraud control unit with respect to an ongoing investigation. No person or entity shall be subject to any civil or criminal liability for releasing patient information in response to a request from the office of inspector general or the Medicaid fraud control unit.

50.   Tennessee law also states that the personal health information (name and address and other identifying information) about a hospital patient **shall not be sold for any purpose**. **See Tenn. Code. Ann. § 68-11-1503(b).** (emphasis added)

51.   Tennessee law further states that any violation of this law **shall be an invasion of the patient's right to privacy**. **See Tenn. Code. Ann. § 68-11-1503(c).** (emphasis added)

52. If a hospital patient's PHI **shall not be divulged**, except for the reasons stated in Tenn. 68-11-1503 (a)(1)(A)-(E), and **shall not be sold for any purpose** as stated in **Tenn. Code. Ann. § 68-11-1503(b),** then it may not be purchased for any purpose, including using the PHI to allow the FDCPA Defendants to collect alleged debts related to the PHI.

53. When the Plaintiffs were served with the collection lawsuits, they first discovered their PHI had been illegally divulged and sold for the sole purpose to allow the Creditors to recover a portion of the debt allegedly owed by the Plaintiffs and to allow the FDCPA Defendants to attempt collection of the entire debt related to the Plaintiffs' PHI.

54. By selling and purchasing the Plaintiffs' PHI for the sole purpose to collect debts related to Plaintiff's PHI, the Defendants were in violation of the state law prohibition against divulging and selling Plaintiffs' PHI, resulting in a statutory invasion of Plaintiffs' rights to privacy. **See Tenn. Code. Ann. § 68-11-1503.**

## FDCPA CLASS CLAIMS

55. Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

56. The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debts. See 15 U.S.C. §§ 1692 *et seq.*

57. Congress passed the FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . , [e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers . . . , and [m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692 (a), (b), and (c).

58. Purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e).

59.    The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)"; *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

60.    "'Courts must view any alleged [FDCPA] violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases.' *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007). (internal quotation marks and citations omitted); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)". *Stratton, supra*, at 450.

61.    "Debt collection is performed through 'communication,' . . . 'conduct,' . . . or 'means'. These broad words suggest a broad view of what the Act considers collection . . . [I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

### *Failing to Provide A Clear Chain of Title*

62.    By failing to provide a clear chain of title of ownership of the debts from the original creditor, CCHMA, to the state court plaintiff, FFIF VI, especially after Plaintiffs requested proof, the FDCPA Defendants falsely represented the character, amount, and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), threatened to take and actually took action it could not legally take, in violation of 15 U.S.C. § 1692e(5), **and**

communicated credit information which it knew or should have known was false, in violation of 15 U.S.C. § 1692e(8), which is the use of false, deceptive, and misleading representations or means in connection with collection of any debt, and the use of false representations and deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair means to collect or attempt to collect any debt and the collection of any amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

### *Attempting to Collect Alleged Debts in the Name of Another Entity*

63. The sworn affidavits provided to Plaintiffs state that FFIF VI was the owner of the debt on the dates the sworn affidavits were signed, not FFIF Holdings, although FFIF Holdings was still reporting to the CRAS that it was the owner of the alleged debts as late as October 2018. **See Doc. 1-1.**

64. Information filed with the Delaware Department of State shows the only name listed as used by FFIF Holdings is "First Financial Investment Fund Holdings, LLC" and no assumed names are listed.

65. Information filed with the Delaware Department of State shows the only name listed as used by FFIF VI is "First Financial Investment Fund VI, LLC" and no assumed names are listed.

66. The alleged debts cannot be owed to "FFIF Holdings" if it does not own them.

67. In connection with collection of the alleged debts from the Plaintiffs, FFIF Holdings used false, deceptive, and misleading representations or means by:

   (a) Using the names "1st Finl Investment Fund Holdings" and "First Fin Inv Fund Holdings" when reporting to the CRAs that Plaintiffs owed the alleged debts, which is the use of any business, company, or organization name other than the

true name of the debt collector's business, company, or organization, in violation of 15 U.S.C. § 1692e(14);

(b)     Failing to identify the true name of the original creditor in the credit reporting to the CRAs, which would mislead the least sophisticated consumer as to the character and legal status of the underlying debt, in violation of 15 U.S.C. § 1692e(2)(A);

(c)     Communicating to the CRAs, Plaintiffs, and anyone else who accessed the Plaintiffs' credit reports during the year prior to the filing of this Complaint that FFIF Holdings could legally collect the alleged debt in the name of "1st Finl Investment Fund Holdings" or "First Fin Inv Fund Holdings" was a threat to take action that cannot be legally taken, and which was actually taken, in violation of 15 U.S.C. § 1692e(5);

(d)     Communicating to the CRAs, Plaintiffs, and anyone else who accessed the Plaintiffs credit reports that FFIF Holdings could legally collect the alleged debts in the name of "1st Finl Investment Fund Holdings" or "First Fin Inv Fund Holdings" was credit information FFIF Holdings knew or should have known is false, in violation of 15 U.S.C. § 1692e(8); and

(e)     Using false representations and deceptive means to collect or attempt to collect the alleged debts by credit reporting that FFIF Holdings is the owner of the debts when the collection lawsuits were filed was in violation of 15 U.S.C. § 1692e(10).

### *Failing to Communicate Plaintiffs Had Disputed the Debts*

68.     The knowledge Plaintiffs had disputed the debts with Buffaloe was imputed from Buffaloe, as agent, to FFIF Holdings, as principal.

69. FFIF Holdings failed to communicate to the CRAs that the Plaintiffs had disputed the debts allegedly owed.

70. By failing to communicate to the CRAs, Plaintiffs, and anyone else who accessed the Plaintiffs' credit reports during the year prior to the filing of this Complaint that the Plaintiffs had disputed the debts, FFIF Holdings communicated credit information which it knew or should have known was false, including the failure to communicate that the debts were disputed, in violation of 15 U.S.C. § 1692e(8), which is the use of false, deceptive, and misleading representations or means in connection with collection of any debt, and the use of false representations and deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair means to collect or attempt to collect any debt and the collection of any amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

### *Attempting to Collect Debts from Plaintiffs By Using Personal Health Information Purchased in Violation of State Law*

71. By attempting to collect the alleged debts by falsely representing or implying in credit reporting and collection lawsuits that FFIF Holdings or FFIF VI could legally be the owners of the alleged debts, the FDCPA Defendants falsely represented the character, amount, and legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A), threatened to take and actually took action they could not legally take, in violation of 15 U.S.C. § 1692e(5), communicated credit information which they knew or should have known was false, in violation of 15 U.S.C. § 1692e(8), which is the use of false, deceptive, and misleading representations or means in connection with collection of any debt, and the use of false representations and deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is the use of unfair means to

collect or attempt to collect any debt and the collection of any amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1), and was the engagement by the FDCPA Defendants in intentional or negligent conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of a debt, in violation of 15 U.S.C. § 1692d, and which resulted in an invasion of the Plaintiffs' personal and financial privacy by a revelation of false financial information to third parties, including the general public, in violation of 15 U.S.C. § 1692c(b), and by interfering physically or otherwise, with Plaintiffs' solitude, seclusion, and or private concerns or affairs by unlawfully attempting to collect debts from them that FFIF Holdings and FFIF VI cannot legally own.

### *False Representation or Implication That Communications Are from an Attorney*

72.     The FDCPA prohibits FFIF VI and Buffaloe from representing that a document comes from an attorney unless an actual attorney has meaningfully reviewed the document, and any documents supporting the allegations in the document. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008).

73.     On information and belief, prior to filing the collection lawsuits, Buffaloe did not possess any documents or information relating to the alleged debts showing FFIF VI could legally own the debts, that the Plaintiffs legally owe the alleged debts to FFIF VI, and what collection efforts had already been made prior to FFIF VI hiring Buffaloe to attempt collection from the Plaintiffs.

74.     If Buffaloe had information showing FFIF VI could legally own the debts, documents or information possessed by FFIF VI that it had obtained from the original creditor,

CCHMA, they would have shown that the debt allegedly owed to FFIF VI by the Plaintiffs did not exist and that each of the Plaintiffs are not a candidate for legal action.

75. Because of this lack of documentation and information, Buffaloe was not able to review or evaluate the underlying facts of the claims asserted to exist against Plaintiffs prior to FFIF VI and Buffaloe having the collection lawsuits filed and served on the Plaintiffs.

76. Listing Buffaloe as FFIF VI's attorney on the civil summons falsely represents or implies to the least sophisticated consumer that an attorney employed by Buffaloe was professionally involved in the Plaintiffs' files before the collection lawsuits were filed.

77. Communications in the form of the civil summonses and sworn affidavits were false, deceptive, and misleading because they were not "from" an attorney in the meaningful sense of the word, and some degree of attorney involvement is required before a communication will be considered "from" an attorney within the meaning of the FDCPA.

78. The collection lawsuits purport that the communications came from a lawyer, but for all practical purposes, they did not.

79. Upon being served the collection lawsuit, the least sophisticated consumer, may reasonably believe an attorney has reviewed his or her file and determined he or she is a candidate for legal action.

80. Listing Buffaloe as FFIF VI's attorney in the collection lawsuits, when none of Buffaloe's attorneys had been meaningfully involved with Plaintiffs' accounts prior to filing and serving the collection lawsuits, violates 15 U.S.C. §1692e's prohibition against false, deceptive, or misleading communications, specifically § 1692e(3), because it falsely implies that an attorney, acting as an attorney, is involved in collection of the alleged debts.

*Respondeat Superior Liability*

81.    In addition to individual liability under the FDCPA, the acts and omissions of Buffaloe as an agent for FFIF Holdings and FFIF VI and who communicated with the Plaintiffs as further described herein, were committed within the time and space limits of its agency relationship with its principals, FFIF Holdings and FFIF VI.

82.    Buffaloe's acts and omissions were incidental to, or of the same general nature, as the responsibilities they were authorized to perform by FFIF Holdings and FFIF VI in collecting consumer debts.

83.    By committing these acts and omissions against the Plaintiffs, Buffaloe was motivated to benefit its principals, FFIF Holdings and FFIF VI.

84.    FFIF Holdings and FFIF VI are each liable to the Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by all debt collectors employed as agents by FFIF Holdings and FFIF VI including, but not limited to the above-cited violations of the FDCPA and invasion of privacy under state law, in their attempts to collect the debts from the Plaintiffs.

## CLASS ALLEGATIONS

85.    Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

86.    Plaintiffs bring this action individually and on behalf of all persons similarly situated, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

*Invasion of Privacy Class Allegations*

87.    Plaintiffs, individually and on behalf of the **IOP CLASS** defined above, sue the Creditors and the FDCPA Defendants for statutory invasion of privacy under Tennessee state law.

88.   The proposed class consists of:

   (a)   All persons served with collection lawsuits filed by the FDCPA Defendants in the state courts of Tennessee;

   (b)   In an attempt to collect debts related to the persons' PHI sold by the Creditors to a debt buyer such as FFIF Holdings, in violation of Tennessee state law; and

   (c)   In the one year preceding the filing of this action.

89.   Excluded from the class are any persons employed by or associated with the Creditors, the FDCPA Defendants or this Court.

90.   The class, as defined above, is identifiable.  Plaintiffs are members of the class.

91.   The FDCPA Defendants have attempted to collect debts incurred by the Plaintiffs and others similarly situated with the Creditors in a sufficient number of actions against members of the Invasion of Privacy Class to make joinder in a single proceeding impractical.  The numerosity requirement of Rule 23(a)(1) is satisfied by the size of the Invasion of Privacy Class.

92.   The Creditors have a policy or practice of selling PHI about patients who received medical care at one of the hospitals in Tennessee that is a subsidiary of CHS to debt buyers, in violation of Tennessee state law.

93.   The legality of the Creditors' policies or practices of selling PHI to debt buyers presents a common question to be decided in this action that satisfies the commonality requirement under Rule 23(a)(2).

94.   The FDCPA Defendants have a policy or practice of attempting to collect debts related to the PHI of patients who received medical care at one of the hospitals in Tennessee that is a subsidiary of CHS.

95.     Since the FDCPA Defendants' policies and practices stated above are followed or used in their attempts to collect consumer debts from the Plaintiffs related to their PHI which was sold and purchased in violation of Tennessee state law, the Plaintiffs' claims are typical as required by Rule 23(a)(3).  The Plaintiffs' Invasion of Privacy class claims are based on and arise out of similar facts constituting the wrongful conduct of the Creditors and FDCPA Defendants.

96.     Plaintiffs have no interests antagonistic to the Invasion of Privacy Class and therefore each is adequate to serve as a representative of the Class as required by Rule 23(a)(4).

97.     Plaintiffs' counsel has sufficient experience and knowledge to represent the Plaintiffs and the Invasion of Privacy Class for the claims asserted in this action. Plaintiffs' counsel is adequate to represent the Plaintiffs and the Invasion of Privacy Class as required by Rule 23(a)(4) and (g) based on their experience in consumer and class cases.

98.     The requirements of Rule 23(b)(3) are also satisfied. The legality of the actions of the Creditors and the FDCPA Defendants in selling and purchasing the PHI of the Plaintiffs' and others similarly situated are predominate issues to be decided in this action establishing the predominance required by Rule 23(b)(3). Determination of these issues in a single class proceeding is superior to individual actions under the criteria set forth in Rule 23 (b)(3)(A)-(D).

### *FDCPA Class Allegations*

99.     Plaintiffs, individually and on behalf of the **FDCPA CLASS** defined above, sue the FDCPA Defendants for FDPCA violations, including:

(a)     invasion of personal and financial privacy by a revelation of false financial information to third parties, including the general public, in violation of 15 U.S.C. § 1692c(b);

(b)     engaging in intentional or negligent conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of a debt, in violation of 15 U.S.C. § 1692d;

(c)     falsely representing the character, amount, and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A);

(d)     falsely representing or implying that any individual is an attorney or that any communication is from an attorney, in violation of 15 U.S.C. § 1692e(3);

(e)     threatening to take and actually taking action it could not legally take, in violation of 15 U.S.C. § 1692e(5);

(f)     communicating credit information which it knew or should have known was false, in violation of 15 U.S.C. § 1692e(8);

(g)     using false representations and deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10);

(h)     using the name any business, company, or organization name other than the true name of the debt collector's business, company, or organization, in violation of 15 U.S.C. § 1692e(14);

(i)     using unfair means to collect or attempt to collect any debt and the collection of any amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1); and

(j)     interfering physically or otherwise, with the solitude, seclusion, and or private concerns or affairs by unlawfully attempting to collect debts the Debt Buyers cannot legally own.

100.    The proposed class consists of:

(a)     All persons served with collection lawsuits filed by the FDCPA Defendants in the state courts of Tennessee in an attempt to collect debts related to the persons' PHI sold by the Creditors to Debt Buyers, including FFIF Holdings, in violation of Tennessee state law;

(b)     All persons who had debts reported to the CRAs by FFIF Holdings in an attempt to collect debts related to the persons' PHI which were sold by the Creditors to Debt Buyers, including FFIF Holdings, in violation of Tennessee state law;

(c)     In the one year preceding the filing of this action.

101.    Excluded from the class are any persons employed by or associated with the Creditors, the FDCPA Defendants or this Court.

102.    The class, as defined above, is identifiable.  Plaintiffs are members of the class.

103.    The FDCPA Defendants have attempted to collect debts incurred with the Creditors in a sufficient number of actions against members of the FDCPA Class to make joinder in a single proceeding impractical.  The numerosity requirement of Rule 23(a)(1) is satisfied by the size of the FDCPA Class.

104.    The FDCPA Defendants have a policy or practice of:

(a)     serving collection lawsuits filed by the FDCPA Defendants in the state courts of Tennessee in an attempt to collect debts related to the persons' PHI which were sold

by the Creditors to a debt buyer such as FFIF Holdings, in violation of Tennessee state law; and

(b)    reporting debts to CRAs in an attempt to collect debts related to the persons' PHI which were sold by the Creditors to a debt buyer such as FFIF Holdings, in violation of Tennessee state law.

The legality of the FDCPA Defendants' policies or practice under the FDCPA presents a common question to be decided in this action that satisfies the commonality requirement under Rule 23(a)(2).

105.    Since the FDCPA Defendants' policies or practices stated above are followed or used in their attempts to collect consumer debts from Plaintiffs and the FDCPA Class are alleged to violate the FDCPA, their claims are typical as required by Rule 23(a)(3). The Plaintiffs' and the FDCPA Class claims are based on and arise out of similar facts constituting the wrongful conduct of the FDCPA Defendants.

106.    Plaintiffs have no interests antagonistic to the FDCPA Class and therefore each is adequate to serve as a representative of the Class as required by Rule 23(a)(4).

107.    Plaintiffs' counsel has sufficient experience and knowledge to represent the Plaintiffs and the FDCPA Class for the claims asserted in this action. Plaintiffs' counsel is adequate to represent the Plaintiffs and the FDCPA Class as required by Rule 23(a)(4) and (g) based on their experience in consumer and class cases.

108.    The requirements of Rule 23(b)(3) are also satisfied. The legality of the FDCPA Defendants' actions and omissions under the FDCPA are predominate issues to be decided in this action establishing the predominance required by Rule 23(b)(3).

Determination of these issues in a single class proceeding is superior to individual actions under the criteria set forth in Rule 23 (b)(3)(A)-(D).

## TRIAL BY JURY

109.  Plaintiffs are entitled to and hereby respectfully demands a trial by jury.  **U.S. Const. amend. 7;  Fed.R.Civ.P. 38.**

## CAUSES OF ACTION

### COUNT I

### INVASION OF THE STATUTORY RIGHT TO PRIVACY OF HOSPITAL PATIENTS' PRIVATE HEALTH INFORMATION

110.  Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

111.  The Tennessee legislature explicitly recognized a hospital patient's inherent right to privacy of his or her personal health information, including their name and address and other identifying information (PHI) by prohibiting it:

(a)  from being divulged, except for specific purposes **[See Tenn. Code Ann. § 68-11-1503(a)]**; and

(b)  sold for any purpose **[See Tenn. Code Ann. § 68-11-1503(b)].**

112.  The Tennessee legislature also explicitly passed legislation stating that any violation of **Tenn. Code Ann. §§ 68-11-1503(a) and 68-11-1503(b)** is an invasion of the patient's right to privacy.  **See Tenn. Code Ann. § 68-11-1503(c).**

113.  Defendants intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns or affairs of the Plaintiffs, namely, by unlawfully attempting to collect debts and thereby invaded Plaintiffs' privacy.

114. Defendants intentionally and/or negligently caused emotional harm to the Plaintiffs by engaging in highly offensive conduct in the course of collecting these debts by selling and purchasing debts that could not be legally owed to FFIF Holdings or FFIF VI because they could not legally purchase the Plaintiffs' personal health information related to the debt, thereby invading and intruding upon the Plaintiffs' right to privacy.

115. Plaintiffs have a reasonable expectation of privacy in their solitude, seclusion, and or private concerns or affairs, especially their personal health information.

116. The conduct of Defendants, in engaging in the above-described illegal collection conduct against the Plaintiffs, resulted in intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

117. As a result of such invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial by a jury, from the Defendants.

## COUNTS II-XII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692c(b), 1692d, 1692e, 1692e(2)(a), 1692e(3), 1692e(5), 1692e(8), 1692e(10), 1692e(14), 1692f, and 1692f(1)

118. Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

119. The FDCPA Defendants' foregoing acts and omissions constitute numerous and multiple FDCPA violations including, but not limited to each and every one of the above-cited FDCPA provisions, with respect to the Plaintiffs.

120. As a result of the FDCPA Defendants' FDCPA violations, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B) in the amount of

$500,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every FDCPA Defendant.

## COUNT XIII

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION UNDER THE FDCPA

121. Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

122. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

**15 U.S.C. § 1692(a) (emphasis added).**

123. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates a broad range of "financial institutions" whose definition includes debt collectors, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

**15 U.S.C. § 6801(a) (emphasis added).**

124. The FDCPA Defendants intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns or affairs of the Plaintiffs,

namely, by unlawfully attempting to collect debts and thereby invaded the Plaintiffs' personal and financial privacy.

125. The FDCPA Defendants intentionally and/or negligently caused emotional harm to the Plaintiffs by engaging in highly offensive conduct in the course of collecting these debts by attempting to collect debts that could not be legally owed to FFIF Holdings or FFIF VI because they could not legally purchase the Plaintiffs' private financial information related to the debt, thereby invading and intruding upon the Plaintiffs' right to personal and financial privacy.

126. Plaintiffs have a reasonable expectation of privacy in their solitude, seclusion, and or private concerns or affairs.

127. The conduct of the FDCPA Defendants, in engaging in the above-described illegal collection conduct against the Plaintiffs, resulted in intrusions and invasions of privacy by the FDCPA Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

128. As a result of such invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial by a jury, from the FDCPA Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs pray that judgment be entered against each and every Defendant for:

## COUNT I

### INVASION OF THE STATUTORY RIGHT TO PRIVACY OF HOSPITAL PATIENTS' PRIVATE HEALTH INFORMATION

- for an award of actual damages from Defendants for the emotional distress suffered as a result of the intentional and/or negligent violations and intentional and/or negligent

invasion of Plaintiffs' personal health information in an amount to be determined at trial by a jury; and for the Plaintiffs;

**WHEREFORE**, the Plaintiffs pray that judgment be entered against each and every FDCPA Defendant for:

## COUNTS II-XII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692c(b), 1692d, 1692e, 1692e(2)(a), 1692e(3), 1692e(5), 1692e(8), 1692e(10), 1692e(14), 1692f, and 1692f(1)

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every FDCPA Defendant and for the Plaintiffs, in an amount to be determined at trial by a jury;

- for an award of statutory damages of $500,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(B) against the FDCPA Defendants, and for the Plaintiffs;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every FDCPA Defendant and for the Plaintiffs;

## COUNT XIII

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION UNDER THE FDCPA

- for an award of actual damages from the FDCPA Defendants for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasion of Plaintiffs' personal and financial privacy in an amount to be determined at trial by a jury; and for the Plaintiffs; and

- for such other and further relief, as may be just and proper.

06/14/19                          Respectfully submitted,

**HARRIET E. ROBINSON**
**BILLY J. GARTIN**
**TARA A. HOLT**
**JESSICA R. NEWSOME**
**MELISSA J. SCOTT**
**SANDRA L. SPEAKES**
**KELLY J. STOKLEY**
**AMIE G. TOLIVER**
**DANIEL G. WRIGHT, JR.**


s/      Alan C. Lee
Alan C. Lee, BPR # 012700
P. O. Box 1357
Talbott, TN 37877-1357
(423) 581-0924
aleeattorney@gmail.com


s/      Brent S. Snyder
Brent S. Snyder, Esq., BPR #021700
2125 Middlebrook Pike
Knoxville, TN 37921
(865) 546-2141
Brentsnyder77@gmail.com

Attorneys for Plaintiffs