UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| HARRIET E. ROBINSON, BILLY J. GARTIN, TARA A. HOLT, JESSICA R. NEWSOME, MELISSA J. SCOTT, SANDRA L. SPEAKES, KELLY J. STOKLEY, AMIE G. TOLIVER, and DANIEL G. WRIGHT, JR., <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS, INC., HOSPITAL MANAGEMENT ASSOCIATES, LLC, COCKE COUNTY HMA, LLC, FIRST FINANCIAL INVESTMENT FUND HOLDINGS, LLC, FIRST FINACIAL INVESTMENT FUND VI, LLC, BUFFALOE & VALLEJO, PLC, and DOES 1-30, <br><br> Defendants. | Civil Action Number 2:19-cv-00098 <br> Judge Thomas A. Varlan <br> Magistrate Judge Debra C. Poplin |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1), Defendants Hospital Management Associates, LLC ("HMA") and Cocke County HMA, LLC ("Cocke County HMA" and, together with HMA, the "HMA Defendants") respectfully move the Court to enter judgment on the pleadings as to the claim asserted against them by Plaintiffs Harriet Robinson, Billy Gartin, Tara Holt, Jessica Newsome, Melissa Scott, Sandra Speakes, Kelly Stokley ("Stokley"), Amie Toliver, and Daniel Wright, Jr. ("Wright") (collectively, "Plaintiffs").

## INTRODUCTION

Plaintiffs bring this action individually and on behalf of a putative class of former patients at hospitals located in Tennessee in a belated attempt to offset Plaintiffs' failure to pay medical bills. They assert a sole claim against the HMA Defendants for statutory invasion of privacy under the Tennessee Patient's Privacy Protection Act ("PPPA"), Tenn. Code Ann. § 68-11-1501, *et seq.*[1] Plaintiffs contend that the HMA Defendants unlawfully sold and divulged their names, addresses, and "other identifying information" to third-party debt collectors in violation of the PPPA.

Plaintiffs fail to state a claim against the HMA Defendants upon which relief may be granted under the PPPA. First, the PPPA does not apply to HMA's assignment of accounts receivable to a third-party debt collector because Plaintiffs do not allege that either of the HMA Defendants is a healthcare facility. Second, the HMA Defendants did not violate the PPPA in assigning Plaintiffs' unpaid accounts to a third-party debt collector. The HMA Defendants did not sell Plaintiffs' health information, because they retained ownership of Plaintiffs' medical records at all times despite selling the underlying accounts receivable. The HMA Defendants also did not improperly divulge Plaintiffs' information, because the PPPA contains an exception that permits the disclosure of names, addresses, and other identifying information for administrative purposes such as collecting payment of medical bills. Third, Plaintiffs' PPPA claim fails because federal law – specifically, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") – expressly authorizes the disclosure of information to third-party debt collectors.

---

[1] Plaintiffs assert Fair Debt Collection Practices Act ("FDCPA") claims against other Defendants in this lawsuit, but they do not assert FDCPA claims against the HMA Defendants. (*See generally* Compl., Docket Entry 1).

Furthermore, this Court lacks subject matter jurisdiction over Plaintiffs' PPPA claim. To maintain a lawsuit in federal court, Plaintiffs must allege that they suffered a concrete and particularized injury. Plaintiffs fall well short of that standard. Indeed, Plaintiffs offer nothing but conclusory allegations that the HMA Defendants invaded their privacy by disclosing their names, addresses, and other identifying information, which allegedly resulted in unspecified emotional harm. Moreover, the PPPA claims asserted by Plaintiffs Stokley and Wright are barred by Tennessee's one-year statute of limitations for invasion of privacy claims. Collection lawsuits were filed against Stokley and Wright on May 15, 2018 and May 21, 2018, respectively, yet Plaintiffs waited until June 14, 2019 to file this lawsuit.

In sum, Plaintiffs simply fail to state a claim that they are entitled to relief from the HMA Defendants under the PPPA. The PPPA was enacted in 1996. A search of Tennessee law reveals no court decision finding that healthcare providers are barred from using third-party debt collectors under the PPPA. For the reasons set forth herein, the HMA Defendants submit that their Motion for Judgment on the Pleadings should be granted and Plaintiffs' PPPA claim against them should be dismissed as a matter of law.

## SUMMARY OF ALLEGATIONS[2]

Plaintiffs were patients at Newport Medical Center in Newport, Tennessee at various points in 2012. (Compl., Docket Entry 1 at ¶ 1; Plaintiffs' Motions to Dismiss filed in the General Sessions Court of Cocke County, Tennessee, attached as **Collective Exhibit A**).[3]

---

[2] The allegations in the pleadings are accepted as true for the purpose of this Motion.

[3] Plaintiffs' Motions to Dismiss filed in the General Sessions Court of Cocke County, Tennessee, and all attachments thereto, are matters of public record. Thus, they are properly considered by the Court on a motion for judgment on the pleadings without converting it into a motion for summary judgment. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) ("[W]e have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its [Rule 12] motion

Plaintiffs ultimately failed to pay their medical bills. (Compl., Docket Entry 1 at ¶ 18; Compl. Collective Exhibit 1, Docket Entry 1-1).

On April 5, 2013, HMA[4] entered into a Purchase and Sale Agreement (the "PSA") with First Financial Investment Fund Holdings, LLC ("FFIF Holdings") whereby HMA assigned certain accounts receivable[5] to FFIF Holdings. (HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit A, Docket Entry 38-1 at pp. 1-2).[6] Plaintiffs' delinquent accounts were among those assigned to FFIF Holdings for collection purposes. (*See* Compl., Docket Entry 1 at ¶¶ 35-36; Compl. Collective Exhibit 1, Docket Entry 1-1). Under the PSA, FFIF Holdings agreed to conduct all activities in connection with Protected Health Information ("PHI") associated with the assigned accounts in accordance with the terms of a mutually-agreed business associate agreement. (HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit A, Docket Entry 38-1 at § 11.4). HMA and FFIF Holdings had entered into a Business Associate Agreement as

---

. . . , and a court can then consider them in resolving the Rule 12[] motion without converting the motion . . . into a Rule 56 motion for summary judgment."); *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (holding that a court may take judicial notice of other court proceedings in resolving a Rule 12 motion).

[4] HMA entered into the PSA on its behalf and on behalf of its affiliates. Newport Medical Center is listed as an affiliate hospital of HMA on Attachment 1 to the PSA.

[5] The PSA states that HMA, through its various affiliated hospitals, has certain patient accounts receivables established in connection with its delivery of health care services to patients.

[6] The Court may properly consider exhibits attached to an answer in deciding a motion for judgment on the pleadings. *See Benzon v. Morgan Stanley Distributors, Inc.,* 420 F.3d 598, 603 (6th Cir. 2005) (determining that, in assessing a Rule 12 motion, a court can consider the complaint, answer, and any written instruments which are attached as exhibits to those pleadings).

of March 5, 2013 (the "BAA").[7] (HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2). Under the BAA, **<u>Plaintiffs' PHI remained the property of HMA</u>** despite the sale of certain accounts receivable to FFIF Holdings. (HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2 at § 2.13).

FFIF Holdings ultimately transferred ownership of Plaintiffs' accounts receivable to First Financial Investment Fund VI, LLC ("FFIF VI"). (Compl., Docket Entry 1 at ¶ 19). In May and June 2018, FFIF VI filed collection lawsuits against Plaintiffs in the General Sessions Court of Cocke County, Tennessee, seeking recovery of unpaid medical bills. (*See* Compl. Collective Exhibit 1, Docket Entry 1-1).

Despite the fact that Plaintiffs' PHI remained the property of HMA at all times, Plaintiffs now contend that the HMA Defendants unlawfully sold and/or divulged Plaintiffs' names, addresses, and "other identifying information," which Plaintiffs define as PHI, to FFIF Holdings in violation of the PPPA. (Compl., Docket Entry 1 at ¶¶ 1, 14, 39, 53, 114). Based on these allegations, Plaintiffs assert a sole statutory invasion of privacy claim against the HMA Defendants under the PPPA. (*Id.* at ¶¶ 111-17). Plaintiffs seek recovery of "actual damages" as a result of "invasions of privacy . . . that would be highly offensive to a reasonable person in that position" and unspecified "emotional distress suffered as a result of the . . . invasion of Plaintiffs' personal health information." (*Id.* at ¶¶ 116-17, pp. 28-29).

---

[7] The HMA Defendants recognize that the PSA is between HMA and FFIF Holdings and the BAA is between "Health Management Associates" and FFIF Holdings. (*See* HMA Defendants' Amended Answer Exhibits A, B, Docket Entries 38-1, 38-2). Health Management Associates, LLC is the parent company of HMA. (*See* HMA Defendants' Amended Corporate Disclosure Statement, Docket Entry 30). Thus, the PSA and the BAA relate to the same accounts receivable and dictate that Plaintiffs' PHI remains the property of HMA despite the sale of the underlying debts to FFIF Holdings.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to Rule 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). In evaluating the non-movant's allegations, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Accordingly, "[a] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the [Court] to draw on its judicial experience and common sense." *Id.* at 679.

In addition, "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). As such, subject matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also* FED. R. CIV. P. 12(h)(3) (providing that, "[i]f the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action"). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

## ARGUMENT

### A. The PPPA Does Not Apply to the Assignment of Plaintiffs' Medical Debts to FFIF Holdings Because Plaintiffs Do Not Allege That Either of the HMA Defendants Is a Healthcare Facility.

Plaintiffs' sole claim against the HMA Defendants is that they violated the PPPA, Tenn. Code Ann. § 68-11-1503. The Tennessee Supreme Court has held that the PPPA "applies **only to healthcare facilities** . . . ." *Bray v. Khuri*, 523 S.W.3d 619, 624 (Tenn. 2017) (emphasis added); *see also* Tenn. Code Ann. § 68-11-1502 ("Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility.").

Plaintiffs claim that the HMA Defendants sold Plaintiffs' accounts receivable to FFIF Holdings. (*See* Compl., Docket Entry 1 at ¶ 19 ("FFIF Holdings allegedly purchased the debts from an entity named Hospital Management Associates, LLC (HMA) . . . ."); ¶¶ 31-36 (describing the transfer of Plaintiffs' accounts receivable from HMA to FFIF Holdings)). Plaintiffs, however, do not allege that either of the HMA Defendants is a "healthcare facility." All Plaintiffs allege is that the HMA Defendants are "subsidiaries" of Community Health Systems, Inc. ("CHS"). (*Id.* at ¶ 2.A). Plaintiffs admit that HMA transferred their debts to FFIF Holdings, which also is clearly stated in the PSA attached to the HMA Defendants' Amended Answer. (*See id.* ¶¶ 19, 31-36; HMA Defendants' Amended Answer Exhibit A, Docket Entry

7
Case 2:19-cv-00098-TAV-DCP   Document 46   Filed 09/20/19   Page 7 of 19   PageID #: 443

that it lacks subject-matter jurisdiction, the court must dismiss the action"). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

## ARGUMENT

### A. The PPPA Does Not Apply to the Assignment of Plaintiffs' Medical Debts to FFIF Holdings Because Plaintiffs Do Not Allege That Either of the HMA Defendants Is a Healthcare Facility.

Plaintiffs' sole claim against the HMA Defendants is that they violated the PPPA, Tenn. Code Ann. § 68-11-1503. The Tennessee Supreme Court has held that the PPPA "applies **only to healthcare facilities** . . . ." *Bray v. Khuri*, 523 S.W.3d 619, 624 (Tenn. 2017) (emphasis added); *see also* Tenn. Code Ann. § 68-11-1502 ("Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility.").

Plaintiffs claim that the HMA Defendants sold Plaintiffs' accounts receivable to FFIF Holdings. (*See* Compl., Docket Entry 1 at ¶ 19 ("FFIF Holdings allegedly purchased the debts from an entity named Hospital Management Associates, LLC (HMA) . . . ."); ¶¶ 31-36 (describing the transfer of Plaintiffs' accounts receivable from HMA to FFIF Holdings)). Plaintiffs, however, do not allege that either of the HMA Defendants is a "healthcare facility." All Plaintiffs allege is that the HMA Defendants are "subsidiaries" of Community Health Systems, Inc. ("CHS"). (*Id.* at ¶ 2.A). Plaintiffs admit that HMA transferred their debts to FFIF Holdings, which also is clearly stated in the PSA attached to the HMA Defendants' Amended Answer. (*See id.* ¶¶ 19, 31-36; HMA Defendants' Amended Answer Exhibit A, Docket Entry

38-1). Because the PPPA does not apply to the HMA Defendants based on the pleadings, Plaintiffs' PPPA claim against the HMA Defendants should be dismissed.[8]

**B.     Plaintiffs Fail to State a Claim for Violation of the PPPA.**

1.     The HMA Defendants Did Not Sell Plaintiffs' PHI.

Even if the PPPA applies, Plaintiffs fail to state a plausible claim for relief under the PPPA. Plaintiffs allege that the HMA Defendants violated the PPPA, Tenn. Code Ann. § 68-11-1503(b), by selling Plaintiffs' "name[s], address[es] and other identifying information (PHI)" to third-party debt collectors. (*See, e.g.*, Compl., Docket Entry 1 at ¶ 1). The PPPA indeed purports to prohibit the **sale** of a patient's name, address, and other identifying information for any purpose. Tenn. Code Ann. § 68-11-1503(b). Importantly, however, the HMA Defendants did not **sell** Plaintiffs' PHI – they **assigned** Plaintiffs' accounts receivable to FFIF Holdings to recover Plaintiffs' past due medical debts. In fact, the BAA expressly provides that all PHI was to remain the property of HMA despite the assignment of certain accounts receivable to FFIF Holdings. Because Plaintiffs' PHI remained HMA's property based on the explicit language of the BAA, the HMA Defendants did not sell Plaintiffs' PHI to FFIF Holdings in violation of the PPPA. (*See* HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2 at § 2.13).

2.     HMA's Assignment of Plaintiffs' Accounts Receivable is Subject to an Exception to the PPPA.

Plaintiffs also contend that the HMA Defendants illegally **"divulged"** Plaintiffs' PHI in violation of the PPPA, Tenn. Code Ann. § 68-11-1503(a). (Compl., Docket Entry 1 at ¶¶ 39, 53). The PPPA, however, expressly sets forth certain exceptions to the broad statutory

---

[8] Indeed, Plaintiffs did not oppose CHS's Motion to Dismiss, (*see* Docket Entry 37), and one of the arguments CHS advanced is that the PPPA does not apply because Plaintiffs did not allege that CHS is a healthcare facility (Docket Entry 23).

prohibition on divulging a patient's identifying information. Notably, the PPPA permits disclosure of a patient's name, address, and other identifying information to "an interested third-party payer or designee, for the purpose of utilization reviews, case management, peer reviews, or other administrative functions . . . ." Tenn. Code Ann. § 68-11-1503(a)(1)(B). As set forth above, HMA retained ownership of Plaintiffs' PHI and merely assigned their accounts receivable to FFIF Holdings for payment of Plaintiffs' medical bills. (*See* HMA Defendants' Amended Answer, Docket Entry 38 at ¶ 14; HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2 at § 2.13). The BAA permitted FFIF Holdings to use Plaintiffs' PHI for "proper management and administration" to collection payment of Plaintiffs' accounts receivable. (HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2 at § 2.3). Thus, FFIF Holdings is a "designee" of the HMA Defendants, pursuant to the BAA, for the purpose of performing "administrative functions," namely, the collection of Plaintiffs' unpaid medical bills. As a result, HMA's alleged disclosure of Plaintiffs' names, addresses, and other identifying information is expressly permitted under the exception to the PPPA, and Plaintiffs fail to state a claim that the HMA Defendants violated Tenn. Code Ann. § 68-11-1503(a).

        3.        <u>The Tennessee Legislature Did Not Intend to Preclude the Transfer of Accounts Receivable to Third-Party Debt Collectors.</u>

In addition, while the PPPA protects certain rights of patients, it is not intended to insulate individuals from the obligation to pay for medical services they received. The language of the PPPA at best is ambiguous on this issue because it invites differing interpretations as to whether the PPPA permits disclosure of patients' names, addresses, and other identifying information to third-party debt collectors. *See Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 53 (Tenn. 2018) ("The language of a statute is ambiguous when it is subject to differing interpretations which yield contrary results."). The legislative history associated with the

enactment of the PPPA is useful in evaluating what rights the PPPA intends to protect.[9] The Tennessee legislature enacted the PPPA following a situation where a young couple who experienced the miscarriage of a child received a deluge of advertisements for baby products after their medical provider sold their identifying information. (*See* Certified Transcript from April 22, 1996 Legislative Session, attached as **Exhibit B**). The type of situation the Tennessee legislature intended to guard against in enacting the PPPA stands in stark contrast to Plaintiffs' invasion of privacy claim based on the sale of their medical debts. Accordingly, Plaintiffs fail to state a plausible claim that the HMA Defendants violated the PPPA.

    **C.    Plaintiffs' PPPA Claim Should Be Dismissed Because Federal Law Permits the Disclosure of PHI to Third-Party Debt Collectors.**

In 1996, Congress passed HIPAA, 42 U.S.C. § 1320d *et seq.*, which governs the dissemination of PHI.[10] "[Through] HIPAA, Congress has spoken about the protection that must be extended to patients regarding their health related information." *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 685 (W.D. Tenn. 2010). HIPAA expressly addresses its interaction with conflicting state laws concerning patient privacy. *Id.* at 686. The general rule, as reflected by HIPAA regulations, is that HIPAA preempts any "contrary" state law. 45 C.F.R. § 160.203. State laws are contrary to HIPAA if: (1) it would be impossible for the health care provider to

---

[9] If a statute is ambiguous, courts may consider "the broader statutory scheme, legislative history, and other sources" in discerning legislative intent. *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015).

[10] PHI is defined as "individually identifiable health information," which is defined as "information that is a subset of health information, including demographic information collected from an individual, and: (1) [i]s created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) [t]hat identifies the individual; or (ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual. 45 C.F.R. § 160.103.

10
Case 2:19-cv-00098-TAV-DCP   Document 46   Filed 09/20/19   Page 10 of 19   PageID #: 446

comply simultaneously with HIPAA and a state law or statute; or (2) a state law or statute stands as an obstacle to the accomplishment of the full objectives of HIPAA. 45 C.F.R. § 160.202.[11] It is the Court's duty is to "determine whether state regulation is consistent with the structure and purpose" of applicable federal law. *State Farm Bank v. Reardon*, 539 F.3d 336, 341–42 (6th Cir. 2008).

HIPAA expressly permits the disclosure of PHI to third-party debt collectors. The regulations promulgated as to HIPAA permit the use or disclosure of PHI "for treatment, <u>payment</u>, or health care operations . . . ." 45 C.F.R. § 164.502(a)(1)(ii) (emphasis added). Payment is defined to expressly include "[b]illing, claims management, [and] <u>collection activities</u> . . . ."[12] 45 C.F.R. § 164.501 (emphasis added). In addition, HIPAA regulations provide that a covered entity "may disclose protected health information to a business associate and may allow a business associate to create or receive protected health information on its behalf, if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information." 45 C.F.R. § 164.502(e)(1)(i).

In this case, Plaintiffs claim that the PPPA prohibits the disclosure of their names, addresses, and other identifying information for debt collection purposes. (*See* Compl., Docket

---

[11] HIPAA regulations essentially codify the standard for conflict preemption arising out of the Supremacy Clause. *See Eiswert v. U.S.*, 322 F. Supp. 3d 864, 873-74 (E.D. Tenn. 2018) (conflict preemption occurs "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992))).

[12] *See also* https://www.hhs.gov/hipaa/for-professionals/faq/268/does-the-hipaa-privacy-rule-prevent-health-care-providers-from-using-debt-collection-agencies/index.html (providing that HIPAA "permits covered entities to continue to use the services of debt collection agencies" and that "[t]hrough a business associate arrangement, the covered entity may engage a debt collection agency to perform [debt collection] function[s] on its behalf.").

Entry 1 at ¶ 53). Plaintiffs' interpretation of the PPPA, however, would make it impossible for Tennessee's healthcare providers to comply simultaneously with HIPAA and the PPPA in collecting unpaid medical debts.[13] HIPAA expressly permits healthcare providers to engage the services of debt collection agencies to recover unpaid medical debts, and Plaintiffs' PPPA claim is directly contrary to this permitted disclosure of PHI under federal law. As a result, HIPAA preempts Plaintiffs' PPPA claim.

Plaintiffs' position also is directly contrary to HIPAA's purposes and objectives. Congress passed HIPAA for the stated purpose of "improv[ing] . . . the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *Webb v. Roberson*, 2013 WL 1645713, at *10 (Tenn. Ct. App. Apr. 17, 2013). HIPAA's purpose is not to impede collection efforts against individuals who fail to pay their medical bills, which is unequivocally reflected in the regulations permitting disclosure of PHI to third-party debt collectors. *See* 45 C.F.R. §§ 164.501, 164.502(a)(1)(ii), 164.502(e)(1)(i). Tennessee's healthcare facilities should not be required to guess as to the permissible content of their disclosures to collect payment on an overdue bill or to worry that a simple collection action or assignment of a debt will expose them to liability under state law.

HMA did exactly what HIPAA permitted it to do in transferring Plaintiffs' accounts receivable to FFIF Holdings for payment purposes alone – and entered into the BAA with FFIF Holdings to ensure that FFIF Holdings would appropriately safeguard Plaintiffs' PHI. (*See* HMA Defendants' Amended Answer Exhibit B, Docket Entry 38-2 at § 2.1 ("All PHI disclosed

---

[13] The Tennessee Supreme Court has not determined whether HIPAA preempts the PPPA, making this an issue of first impression. *See Bray v. Khuri*, 523 S.W.3d 619, 624 (Tenn. 2017) (noting that "[t]he Patient's Privacy Protection Act is also inapplicable; therefore, we need not determine whether Tennessee's privacy law conflicts with or is preempted by HIPAA.").

to [FFIF Holdings] by [HMA] shall be retained in confidence by FFIF Holdings . . . .")). If Plaintiffs' interpretation of the PPPA were accepted, healthcare providers would be prohibited from disclosing PHI to business associates, to accrediting agencies, to coding or claims auditors, and for the purposes of undergoing internal security audits, including HIPAA audits. The legislative history makes clear that prohibiting the disclosure of PHI to debt collectors is not the type of protection the Tennessee legislature intended in enacting the PPPA. (*See* **Exhibit B**). Because the PPPA is contrary to HIPAA as it relates to the disclosure of Plaintiffs' past due accounts for debt collection purposes, HIPAA preempts Plaintiffs' PPPA claim.

Even if the Court determines that HIPAA does not preempt the PPPA in this instance, Plaintiffs' claim still lacks merit, because the Tennessee legislature did not intend for the PPPA to impact the federal scheme regulating the disclosure of PHI by healthcare facilities. In 2005, the Tennessee legislature amended the PPPA to allow for the disclosure of medical information to the extent permitted by federal law. Indeed, the 2005 amendment to the PPPA provides that "it shall not be unlawful to disclose, nor shall there be any liability for disclosing, medical information in response to a subpoena, court order, *or request authorized by state or federal law*." Tenn. Code Ann. § 68-11-1503(d) (emphasis added). The PPPA's legislative history reflects that the 2005 amendment to the Act intended to clarify that "health care providers in Tennessee may still disclose medical information *so long as other state or federal laws authorize such disclosures*." (Certified Transcript from April 18, 2005 Legislative Session, attached as **Exhibit C**) (emphasis added).

As set forth above, federal law/HIPAA authorizes the disclosure of PHI to third-party debt collectors and to a business associate. *See* 45 C.F.R. §§ 164.501, 164.502(a)(1)(ii), 164.502(e)(1)(i). The PPPA's legislative history demonstrates that the Tennessee legislature did

not intend for the PPPA to be more stringent than federal laws regulating the disclosure of PHI; instead, it intended for the PPPA to operate in conjunction with such federal laws. Accordingly, the PPPA does not prohibit the disclosure of Plaintiffs' information to third-party debt collectors, and Plaintiffs' claims against the HMA Defendants must be dismissed.

> D. **Alternatively, Plaintiffs Lack Article III Standing Because They Fail to Allege That They Suffered Any Concrete Injury.**

Article III of the Constitution extends federal judicial power to only a limited set of "cases" and "controversies." As such, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement . . . [of] alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). One aspect of this justiciability question is *standing* — i.e., whether the parties have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). The United States Supreme Court has clarified that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have suffered "[1] an injury in fact, [2] fairly traceable to the defendant's conduct, [3] that is likely to be redressed by a favorable decision from the court." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014). The plaintiff bears the burden of proving standing to bring suit in federal court. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016)).

To establish injury in fact, a plaintiff must show "an invasion of a legally protected interest [that] is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (alteration in original)

(internal quotation marks omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S.Ct. at 1548 (2016). While intangible injuries may be sufficiently concrete in some cases, it does not mean standing is present "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate [it]." *Id.* at 1549. "[A] bare procedural violation, divorced from any concrete harm," will not suffice. *Id.*

Here, Plaintiffs allege a bare procedural violation devoid of any concrete harm they purportedly suffered. In connection with their PPPA claim, Plaintiffs merely allege that they are "entitled to actual damages" as a result of "invasions of privacy . . . that would be highly offensive to a reasonable person in that position." (Compl., Docket Entry 1 at ¶¶ 116-17). Plaintiffs request an award of actual damages based on some unspecified "emotional harm" and "the emotional distress suffered as a result of the . . . invasion of Plaintiffs' personal health information." (*Id.* ¶ 114, pp. 28-29). Plaintiffs' conclusory allegations fail to prove standing.

When reviewing a challenge to subject matter jurisdiction, the court must accept the factual allegations of the plaintiff's complaint as true. *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). At the same time, however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice." *Id.* The references to emotional distress in the Complaint are the very definition of legal conclusions masquerading as factual allegations, and they fail to demonstrate the required concrete injury. *See Oneal v. First Tennessee Bank*, 2018 WL 1352519, at *10 (E.D. Tenn. Mar. 15, 2018) (dismissing Fair Credit Reporting Act claims where the plaintiff merely alleged an invasion of his legally-protected privacy interests and corresponding mental and emotional distress); *Smith v. Ohio State University*, 191 F. Supp. 3d 750, 757 (S.D. Ohio 2016) (determining that there was no Article III standing when the only allegations were invasion of privacy and related emotional distress); *see*

*also Yeska v. Experian Info. Sols., Inc.*, 2016 WL 7674783, at *5 (E.D. Mich. Dec. 21, 2016), *report and recommendation adopted,* 2017 WL 85830 (E.D. Mich. Jan. 10, 2017) ("Actual damages may include damages for emotional distress, but only where the plaintiff 'reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements.'")). Therefore, Plaintiffs' conclusory allegations of emotional distress are insufficient to carry their burden of proving Article III standing. *Lujan*, 504 U.S. at 561. As a result, Plaintiffs' claims must be dismissed based on lack of subject matter jurisdiction.

### E. The PPPA Claims Asserted By Plaintiffs Stokley and Wright Are Barred By the Applicable One-Year Statute of Limitations for Invasion of Privacy Claims.

The PPPA does not explicitly set forth a statute of limitations. *See* Tenn. Code Ann. § 68-11-1501, *et seq.* The statute does, however, provide that any violation "shall be an invasion of the patient's right to privacy." Tenn. Code Ann. § 68-11-1503(c). The applicable statute of limitations for an invasion of privacy claim in Tennessee is "within one (1) year after the cause of action accrued." *See* Tenn. Code Ann. § 28-3-104(a); *Rutherford v. First Tennessee Bank Nat. Ass'n*, 2008 WL 3307203, at *6 (E.D. Tenn. Aug. 7, 2008). Tennessee courts recognize that "the statute of limitations begins to run when the injury is discovered, or in the exercise of reasonable care and diligence, the injury should have been discovered." *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.,* 876 S.W.2d 818, 820 (Tenn. 1994). Notably, the discovery rule does not permit a plaintiff to delay filing suit until "all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff." *Shadrick v. Coker,* 963 S.W.2d 726, 733 (Tenn. 1998). In other words, a plaintiff need not actually know the specific type of legal claim he or she has so long as the plaintiff is "aware of facts sufficient to put a reasonable person on

notice that he has suffered an injury as a result of wrongful conduct." *Stanbury v. Barcardi,* 953 S.W.2d 671, 677 (Tenn. 1997).

The PPPA claims asserted by Plaintiffs Stokley and Wright are barred by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a). Plaintiffs allege that they discovered their PHI had been "divulged and sold" by the HMA Defendants' collection lawsuits. (Compl., Docket Entry 1 at ¶ 53). However, when an alleged statutory violation is based on initiation of a collection lawsuit, the discovery rule dictates that the statute of limitations begins to run at the time of the lawsuit's filing, rather than the time of service. *See Crumel v. TCCA, Inc.,* 2014 WL 6844643, at *4 (E.D. Tenn. Dec. 3, 2014). FFIF VI issued a civil warrant to Stokley on May 15, 2018, and FFIF VI issued a civil warrant to Wright on May 21, 2018 – both public records – more than one year before Plaintiffs filed this lawsuit on June 14, 2019. (*See* Compl. Collective Exhibit 1, Docket Entry 1-1 at pp. 13, 17). Because Stokley and Wright had notice of a potential invasion of privacy claim against the HMA Defendants more than one year before they filed this lawsuit on June 14, 2019, their PPPA claims, and the PPPA claims of all other putative class members where collection suits were filed before June 14, 2018, must be dismissed on statute of limitations grounds.

## CONCLUSION

For these reasons, the HMA Defendants request that the Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiffs' claim against them.

17
Case 2:19-cv-00098-TAV-DCP   Document 46   Filed 09/20/19   Page 17 of 19   PageID #: 453

Respectfully submitted,

/s/ Terrence M. McKelvey
Lauren Patten (#27457)
Terrence M. McKelvey (#36531)
(admitted *pro hac vice*)
Butler Snow LLP
The Pinnacle at Symphony Place
150 Third Avenue South, Suite 1600
Nashville, Tennessee 37201
(615) 651-6700
(615) 651-6701 FAX

Melody McAnally (#25971)
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
(901) 680-7200
(901) 680-7201 FAX

*Counsel for Defendants Hospital Management Associates, LLC and Cocke County HMA, LLC*

# CERTIFICATE OF SERVICE

      I certify that a true and exact copy of the foregoing has been served upon Filing Users via the electronic filing system and on other counsel via U. S. Mail, first-class postage prepaid, this September 20, 2019, on the following:

Alan C. Lee
P.O. Box 1357
Talbot, Tennessee 37877-1357

*Counsel for Plaintiffs*

Gregory Brown
Christopher C. Field
Lowe Yeager & Brown PLLC
900 S. Gay Street, Suite 2102
Knoxville, Tennessee 37902

*Counsel for Defendant Buffaloe & Vallejo, PLC*

Glenn R. Walter
Lewis, Thomason, King, Krieg & Waldrop, P.C.
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, Tennessee 37901

*Counsel for Defendants First Financial Investment Fund Holdings, LLC and First Financial Investment Fund VI, LLC*

Brent S. Snyder
2125 Middlebrook Pike
Knoxville, Tennessee 37921

*Counsel for Plaintiffs*

John R. Jacobson
W. Russell Taber III
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203

*Counsel for Defendant Community Health Systems, Inc.*

                                                    /s/ Terrence M. McKelvey

48886695.v9