## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TENNESSEE

HARRIET E. ROBINSON, et al.,

      Plaintiffs,

v.

COMMUNITY HEALTH SYSTEMS,
INC., et al.,

      Defendants.

Case No. 2:19-cv-98-DCLC-CRW

## BUFFALOE & VALLEJO, PLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Buffaloe & Vallejo, PLC ("Buffaloe"), by and through counsel, pursuant to Fed.

R. Civ. P. 12(c), moves for judgment on the pleadings as to all claims asserted against it. As

grounds for this motion, Buffaloe states as follows:

I.    Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims because (a) as a non-healthcare facility, Buffaloe is not covered by the Tennessee Patient Privacy Protection Act ("PPPA"); (b) even if Buffaloe were covered by the PPPA, Plaintiffs do not allege that it sold patient health information in violation of the PPPA; and (c) alternatively, federal law permits disclosure of identifying information for collection purposes;

II.    Buffaloe is entitled to judgment on the pleadings as to the FDCPA claims premised upon alleged violations of the PPPA because (1) Buffaloe's alleged conduct does not constitute a violation of the PPPA, and (2) even if the conduct constituted a violation of the PPPA, the act of collecting a debt on behalf of a debt buyer does not fall within the broad range of conduct prohibited by the FDCPA.

III.    Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' 15 U.S.C. §§ 1692c(b) claim because it does not allege that Buffaloe communicated with any third party outside of filing the underlying collection action.

IV.    Buffaloe is entitled to judgment on the pleadings as to the FDCPA claims of Plaintiffs Stokely, Wright, and Gartin because they are barred by the statute of limitations.

V.    Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' "chain of title" claims because, in response to Plaintiffs' counsel's informal request, Buffaloe provided "more proof," as requested.

VI.    Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' FDCPA claims based upon an alleged lack of meaningful review by Buffaloe because where a sworn affidavit

1

establishing the amount and a validity of a debt, alone, serves as a sufficient basis for filing a suit on sworn account, any expectation that an attorney conducted factual investigation beyond that is unreasonable, and cannot give rise to liability under 15 U.S.C. § 1692e.

VII.     Buffaloe is entitled to judgment on the pleadings as to all claims because Plaintiffs fail to allege a concrete and particularized injury necessary to confer standing under Article III of the United States Constitution.

In further support of this motion, Buffaloe states as follows:

## PROCEDURAL HISTORY AND ALLEGATIONS

1.       On June 14, 2018, Plaintiffs filed a putative class action against Defendants variously alleging violations of the Tennessee Patient Protection Act, (Tenn. Code Ann. §§ 68-11-1503) and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (*See generally* ECF Doc. 1, PageID #: 1-30).

2.       Plaintiffs incurred medical debts arising from services provided by hospitals. (ECF Doc. 1, ¶ 18, PageID #: 5).

3.       Buffaloe is a law firm that performs debt collection. (ECF Doc. 1, ¶¶ 11, 17, PageID #: 4-5).

4.       After Plaintiffs defaulted on their outstanding medical debts, First Financial Investment Fund Holdings ("FFIF Holdings") purchased the debts from Hospital Management Associates, LLC ("HMA"). (ECF Doc. 1, ¶ 19, PageID #: 5-6).

5.       FFIF Holdings transferred ownership of the debts to First Financial Investment Fund VI, LLC ("FFIF VI") (FFIF Holdings and FFIF VI may collectively be referred to as "First Financial"). (ECF Doc. 1, ¶ 19, PageID #: 5-6).

6.       FFIF VI hired Buffaloe to collect the debts. (ECF Doc. 1, ¶ 19, PageID #: 5-6).

7.       Buffaloe filed state court actions to collect the debts. (ECF Doc. 1, ¶ 21, PageID #: 6; ECF Doc. 1-1, PageID #: 31-48).

8.       The civil summonses in all of the cases were filed on sworn account, and each one

2

included an attached affidavit of account from a business records custodian for FFIF VI.  (ECF Doc. 1-1, PageID #: 31-48).

9.      The civil summonses filed in those actions were prepared by Buffaloe, and they state the amounts allegedly owed to FFIF VI.  (ECF Doc. 1, ¶¶ 23, 24, PageID #: 6; ECF Doc. 1-1, PageID #: 31-48).

10.      Following service in the underlying collection actions, Plaintiffs engaged counsel. (ECF Doc. 1, ¶ 25, PageID #: 6).

11.      Counsel for Plaintiffs attended the initial state court hearing, where he notified Buffaloe that Plaintiffs disputed the debts.  (ECF Doc. 1, ¶ 26, PageID #: 6-7).  Plaintiffs do <u>not</u> allege that a dispute was submitted in writing.  (*See* ECF Doc. 1, ¶ 26, PageID #: 6-7).

12.      Plaintiff's attorney requested that Buffaloe provide him with "more proof" regarding ownership of the debts.  (ECF Doc. 1, ¶ 28-29, PageID #: 7).

13.      Pursuant to Plaintiffs' attorney's request, Buffaloe provided Plaintiffs' attorney with a number of documents, including the affidavits of account that were attached to the civil summonses, assignments and bills of sale between HMA and FFIF Holdings, affidavits of authentication,[1] and documents entitled "Conditions of Treatment and Admission" from the original creditor.  (ECF Doc. 1, ¶¶ 29- 38, PageID #: 7-9).

14.      With the exception of the affidavits of account that were attached to the civil summonses, Plaintiffs did not attach to the Complaint any of the documents that were provided in response to the alleged dispute.  (*See generally* ECF Docs. 1, 1-1, PageID #: 1-48).

15.      Plaintiffs allege that, through its collection efforts, Buffaloe committed the

---

[1] Plaintiffs allege that "[n]o attached documents to the Affidavits of Authentication have been provided to Plaintiffs" [ECF Doc. 1, ¶ 37, PageID #: 7-8], however, Plaintiffs concede in their allegations that the affidavits of authentication were accompanied by other documents [ECF Doc. 1, ¶¶ 29, 34, 35, 36, 38, PageID #: 7-8].

3

following violations of state law and the FDCPA:

a. Plaintiffs allege that Buffaloe's attempted collection of the subject debts on behalf of its client constitutes the sale, divulging, or purchase of protected health information, which they claim is prohibited by Tenn. Code Ann. § 68-11-1503,[2] and further constitutes an invasion of privacy pursuant Tenn. Code Ann. § 68-11-1503(c). (ECF Doc. 1, ¶¶ 48-54, PageID #: 7-9);

b. Similarly, Plaintiffs allege that, by filing lawsuits seeking to collect the medical debts that Plaintiffs allege that First Financial is prohibited from owning by state law, Buffaloe violated various provisions of 15 U.S.C. §§ 1692e and 1692f,[3] as well as 15 U.S.C. §§ 1692d and 1692c(b). (ECF Doc. 1, ¶ 71, PageID #: 15-16);

c. Plaintiffs allege that Buffaloe's responses to their attorney's request for "more proof" were incomplete and should have contained additional documentation. (ECF Doc. 1, ¶¶ 29- 40, PageID #: 7-9). Plaintiffs claim that this alleged failure constitutes violations of numerous provisions of 15 U.S.C. §§ 1692e and 1692f.[4] (ECF Doc. 1, ¶ 62, PageID #: 13-14); and

d. Plaintiffs allege that by filing civil warrants with Buffaloe listed as attorney of record in the underlying collection actions, Buffaloe falsely represented or implied that the civil warrants were supported by documentation showing that the debts were owed to the debt owner, that the Plaintiffs were proper candidates for legal action, and that an attorney for Buffaloe was meaningfully involved in the review of such documentation and the creation of the civil warrant. (ECF Doc. 1, ¶¶ 72-80,

---

[2] The Patient Privacy Protection Act, found at Tenn. Code Ann. § 68-11-1501, *et seq.*, is hereinafter referred to as the "PPPA."
[3] 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).
[4] 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).

4

PageID #: 17-18). Plaintiffs generally claim that this alleged conduct is a violation of 15 U.S.C. § 1692e, and specifically 15 U.S.C. § 1692e(3). (ECF Doc. 1, ¶¶ 72-80, PageID #: 17-18).

16. Plaintiffs assert two separate sets of class allegations against Buffaloe, referred to as the "Invasion of Privacy Class" ("IOP Class") which arise from the alleged violations of Tenn. Code Ann. § 68-11-1503 and related Tennessee common law, and the "FDCPA Class," which arise from the alleged FDCPA violations. (*See generally* ECF Doc. 1, ¶¶ 85-108, PageID #: 19-25).

17. The proposed IOP Class consists of persons (a) served with collection lawsuits "by the FDCPA Defendants" in Tennessee state courts, (b) to collect debts that are alleged to "relate[ ] to the persons' PHI sold by the Creditors to a debt buyer such as FFIF Holdings, in violation of Tennessee state law," and (c) and where service of the lawsuit occurred within the year preceding filing of the this action. (ECF Doc. 1, ¶ 88, PageID #: 20).

18. The proposed FDCPA Class consists of persons (a) served with collection lawsuits "by the FDCPA Defendants" in Tennessee state courts, (b) to collect debts that are alleged to "relate[ ] to the persons' PHI sold by the Creditors to Debt Buyers,[5] such as FFIF Holdings, in violation of Tennessee state law," and (c) and where service of the lawsuit occurred within the year preceding filing of the this action. (ECF Doc. 1, ¶ 88, PageID #: 20) (footnote not in original).

19. As for causes of action, Plaintiffs allege thirteen separate counts against Buffaloe. (ECF Doc. 1, ¶¶ 72-80, PageID #: 17-18).

20. Count I is for invasion of privacy resulting from the alleged violation of the PPPA; Counts II-XII address alleged violations of specified provisions of the FDCPA; and Count XIII is for invasion of privacy under the FDCPA, arising from the collection conduct alleged to be in

---

[5] The term "Debt Buyers" specifically refers to FFIF Holdings and FFIF VI. (ECF Doc. 1, ¶ 2(B), PageID #: 2).

5

violation of the PPPA. (ECF Doc. 1, ¶¶ 110-128, PageID #: 25-28).

21.     For Counts II-XII, it is notable that, outside of a generic reference to "actual damages" in paragraph 120, Plaintiffs do not offer any explanation of how they were injured as a result of the alleged violations. (*See generally* ECF Doc. 1, PageID #: 1-30).

## STANDARD

A motion for judgment on the pleadings may be filed after the defendant files an answer. Fed. R. Civ. P. 12(c). Such a motion argues that a plaintiff's complaint fails to state a claim for which relief may be granted and is governed by the same standard that applies to motions filed pursuant to Fed. R. Civ. P. 12(b)(6). *Ruppe v. Knox Cty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809–10 (E.D. Tenn. 2014). Lack of subject matter jurisdiction may also be properly raised in the form of a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings after the filing of a responsive pleading. *S.G. v. CBL & Associates Mgmt., Inc.*, No. 1-09-CV-83, 2010 WL 743731, at *1, n.1 (E.D. Tenn. Feb. 26, 2010). In considering a motion challenging the existence of subject matter jurisdiction, courts must determine whether the motion attacks the complaint on its face or attacks the existence of subject matter jurisdiction as a matter of fact. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996) (citing *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack goes to the question of whether the plaintiff has alleged on the face of the complaint a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of its Rule 12(b)(1) analysis. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

# LAW and ARGUMENT

**I.** **Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims.**

    **a.** **Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims because, as a non-healthcare facility, Buffaloe is not covered by the PPPA.**

The Patient Privacy and Protection Act states the policy that "[e]very patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility." Tenn. Code Ann. § 68-11-1502. In furtherance of this policy, the PPPA prohibits "[t]he name and address and other identifying information of a *patient*" from being sold or divulged. Tenn. Code Ann. § 68-11-1503 (emphasis added). "Any violation of [Tenn. Code Ann. § 68-11-1503] shall be an invasion of the *patient's* right to privacy." Tenn. Code Ann. § 68-11-1503(c).

The Supreme Court of Tennessee has held that claims under the PPPA are "available only against those persons who (1) have a statutory duty to keep identifying information confidential, and (2) actually divulge that information to parties not falling within a statutory exception." *Givens v. Mullikin*, 75 S.W.3d 383, 413 (Tenn. 2002). Subsequently, the Supreme Court of Tennessee held, more explicitly, that "statute applies *only* to healthcare facilities." *Bray v. Khuri*, 523 S.W.3d 619, 624 (Tenn. 2017) (emphasis added). In this Court's memorandum opinion and order, it noted that Plaintiffs failed to state a claim against Community Health Systems, Inc. ("CHSI") for which relief may be granted because "Plaintiffs do not allege facts demonstrating that CHSI is a healthcare facility under the [PPPA]." (ECF Doc. 49, PageID #: 667-668)

Similar to CHSI, Plaintiffs do not allege that Buffaloe or its client are healthcare facilities who provided medical services to Plaintiffs. (ECF Doc. 1, ¶¶ 15-19, PageID #: 4-5) (alleging that the subject medical services were originally owed to CCHMA and other hospitals). According to Plaintiffs' allegations, Buffaloe is a "debt collector" collecting a debt on behalf of its client. (ECF

7

Doc. 1, ¶¶ 15-19, PageID #: 4-5). As held in *Givens* and *Bray*, and as recognized by this Court in its memorandum opinion and order, because Buffaloe is not a healthcare facility, and Plaintiffs are not Buffaloe's patients, the PPPA does not apply to Buffaloe. *See Givens*, 75 S.W.3d at 413; *Bray*, 523 S.W.3d at 624; (ECF Doc. 49, PageID #: 667-668). Therefore, Buffaloe is entitled to judgment on the pleadings as to the claims asserted in Count I of Plaintiffs' Complaint.

> **b. Alternatively, Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims because, even if Buffaloe were covered by the PPPA, Plaintiffs do not allege that it sold patient health information in violation of the PPPA.**

Alternatively, Plaintiffs do not allege facts to show that any defendant "sold" Plaintiffs' "names, addresses, or other identifying information," in violation of Tenn. Code Ann. § 68-11-1503. Plaintiffs allege that "[a]fter default, FFIF Holdings allegedly purchased *the debts* from [HMA] then transferred ownership of the debt to FFIF VI, which hired Buffaloe to assist in the collection of the alleged debts from the Plaintiffs and others similarly situated." (ECF Doc. 1, ¶ 19, PageID #: 5-6) (emphasis added). The Tennessee General Assembly enacted the PPPA in response to a situation in which a medical provider sold the personal identifying information of its patients to advertisers for baby products. (ECF Doc. 46-2, PageID #: 649). The PPPA was not intended to prohibit the transfer of medical debts for purposes of payment and collection; rather, the PPPA's legislative history demonstrate that it is intended to prohibit the sale of patient's personal information. (*See* ECF Doc. 46-2, PageID #: 649); Tenn. Code Ann. § 68-11-1502 and -1503. The subject of the alleged sale was the Plaintiffs' "debts," not identifying information. (ECF Doc. 1, ¶ 19, PageID #: 5-6).

Furthermore, Plaintiffs attempt to broaden the scope of the statute by stating that, because the statute makes the sale and divulgence of a patient's information actionable, then it implicitly makes the purchase of such information actionable. (ECF Doc. 1, ¶¶ 51-54, PageID #: 11-12). The logic employed by Plaintiffs is akin to arguing that "because speaking slander is actionable,

8

surely hearing slander is likewise actionable." The statute only concerns the sale and divulgence of identifying information. *See* Tenn. Code Ann. § 68-11-1503. Even if Plaintiffs are correct that the PPPA prohibits the sale and transfer of medical debts, the PPPA would, in turn, constitute a disfavored restraint of trade, would be in derogation of the common law, and should be strictly construed. *Steele v. Ft. Sanders Anesthesia Group*, 897 S.W.2d 270, 282 (Tenn. Ct. App. 1994) (holding that "[t]he common law may not be altered any further by statute than the statute expressly declares and necessity requires"); *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 U.S. Dist. LEXIS 57616, 2006 WL 2370338, at *9 (E.D. Tenn. Aug. 15, 2006) (quoting *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993)) *aff'd*, 246 F. App'x 969 (6th Cir. 2007). As such, the PPPA cannot be judicially expanded to address conduct not expressly prohibited by the Act, such as the purchase of a debt or the collection of a debt.

Considering the conduct alleged by Plaintiffs, Buffaloe did not sell identifying information. (ECF Doc. 1, ¶ 19, PageID #: 5-6). Indeed, Buffaloe did not even purchase identifying information.[6] (ECF Doc. 1, ¶ 19, PageID #: 5-6). Buffaloe simply attempted to **collect debts**. (ECF Doc. 1, ¶¶ 17-18, PageID #: 5). Such conduct is not prohibited by the PPPA. *See* Tenn. Code Ann. § 68-11-1501, *et seq*. For this reason, Buffaloe is entitled to judgment on the pleadings as to the claims asserted in Count I of Plaintiffs' Complaint.

### c. Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims because federal law permits disclosure of identifying information for collection purposes.

Finally, Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' state law claims because federal law permits disclosure of identifying information for collection purposes. In

---

[6] Again, Buffaloe emphasizes that the subject of the alleged sale was a <u>debt</u>, not identifying information.

9

support of this ground for judgment on the pleadings, Buffaloe relies upon and incorporates by reference the law and arguments advanced in co-Defendants HMA and CCHMA's *MOTION FOR JUDGMENT ON THE PLEADINGS* [ECF Doc. 45] and *MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS*, specifically section (C) [ECF Doc. 46; PageID #: 446-450]. For the reasons set forth therein, Buffaloe is entitled to judgment on the pleadings as to the claims asserted in Count I of Plaintiffs' Complaint.

## II. Buffaloe is entitled to judgment on the pleadings as to the FDCPA claims premised upon alleged violations of the PPPA.

As noted above, Plaintiffs have alleged that Buffaloe and its client violated the PPPA by purchasing identifying information. (ECF Doc. 1, ¶¶ 48-54, PageID #: 7-9). Plaintiff further alleges that collecting the debt purchased in violation of the PPPA, in turn, constitutes violations of various provisions of the FDCPA, including 15 U.S.C. §§ 1692c(b) (prohibiting the communication with third parties in connection with a debt collection), 1692d (prohibiting practices which have the natural consequence of harassment, oppression, or abuse), 1692e (prohibiting false and deceptive collection practices), and 1692f (prohibiting unfair collection practices). (ECF Doc. 1, ¶ 71, PageID #: 15-16). As established in the previous section, neither Buffaloe nor its client violated the PPPA in the attempts to collect the subject debts. (*See, supra,* §§ I(a)-(c)). The statute only applies to healthcare facilities; it only prohibits the sale of identifying information, not debts; and, any incidental disclosure of identifying information in the course of debt collection is allowed by federal law. (*See, supra,* § I(a)-(c)).

Even if this Court concluded that Buffaloe's alleged conduct somehow violated the PPPA, such a conclusion would not necessarily require this Court to conclude that Buffaloe also violated the FDCPA. The United States Court of Appeals for the Sixth Circuit has held that "Congress did not turn every violation of state law into a violation of the FDCPA." *Currier v. First Resolution*

10

*Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014). "The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act." *Id*. Here, Plaintiffs allege that Buffaloe and First Financial violated various provisions of the FDCPA "[b]y attempting to collect the alleged debts by falsely representing or implying in credit reporting and collection lawsuits that [First Financial] could *legally* be the owners of the alleged debts…." (ECF Doc. 1, ¶ 71, PageID #: 15-16) (emphasis added). In other words, Buffaloe violated the FDCPA by stating in collection actions that its client, First Financial, owned the subject debts which, under Plaintiff's theory, is a legal impossibility under the PPPA. (*See* ECF Doc. 1, ¶ 71, PageID #: 15-16). While Plaintiffs allege that the conduct constituted an intrusion upon seclusion, such intrusion existed solely by virtue of the alleged illegality of the collection practice. (*See* ECF Doc. 1, ¶ 71, PageID #: 15-16) (alleging that Defendants intruded upon Plaintiff's seclusion "by unlawfully attempting to collect debts from them that [First Financial] cannot legally own").

Outside of the alleged illegality under the PPPA, Plaintiffs have not alleged anything intrinsic about the act of collecting a debt on behalf of a debt buyer—a garden-variety collection practice—that is deceptive, unfair, or harassing. (*See* ECF Doc. 1, ¶ 71, PageID #: 15-16). Under Plaintiffs' theory, these violations pivot entirely on the determination of whether Buffaloe's conduct of collecting a debt on behalf of First Financial constitutes a violation of the PPPA. Plaintiffs have failed to state viable claims because (1) as set forth in § I, Buffaloe's alleged conduct does not constitute a violation the PPPA, and (2) even if the conduct constituted a violation of the PPPA, the act of collecting a debt on behalf of a debt buyer does not "fall[ ] within the broad range of conduct prohibited by the [FDCPA]." *See Currier*, 762 F.3d at 537. Therefore, Buffaloe is entitled to judgment on the pleadings as to the FDCPA claims which are premised upon alleged violations of the PPPA.

**III.** **Alternatively, Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' 15 U.S.C. § 1692c(b) claim because it does not allege that Buffaloe communicated with any third party outside of filing the underlying collection action.**

Section 1692c(b) generally prohibits communications with third parties in collection of a debt, with certain exceptions, including communications to "effectuate a postjudgment remedy":

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Plaintiffs allege that Buffaloe violated 15 U.S.C. § 1692c(b) and by communicating false financial information to third-parties. (ECF Doc. 1, ¶ 71, PageID #: 16-17). At the outset, Buffaloe would show that Plaintiffs have not alleged that Buffaloe ever communicated with any third party outside of a brief reference to communications to "the general public," presumably through the filing of civil warrants in state court. (*See generally* ECF Doc. 1, PageID #: 1-30; ECF Doc. 1, ¶¶ 41-47, 71, PageID #: 9-10, 16-17). Plaintiffs' § 1692c(b) claims against Buffaloe must fail.

The theory that a court filing is a prohibited third-party communication, so that any collector would have to obtain the debtor's consent prior to filing any pleading or other filing, necessarily leads to absurd results. Most obviously, plaintiffs would be put in the position of acting as gatekeepers to the filing of collection actions against them. Furthermore, the text of § 1692c(b) demonstrates that Congress did not intend for pleadings and court filings to be considered prohibited communications with third parties. Specifically, one exception to the general prohibition permits debt collectors to obtain leave of court to communicate with third parties. *See* 15 U.S.C. § 1692c(b). This exception necessarily assumes that debt collectors may file pleadings to initiate collection actions, and file motions for leave within those actions, without running afoul of § 1692c(b). *See id.*

12

Plaintiffs' theory is so tenuous that there exists scant authority addressing similar theories. However, in a recent opinion, the United States District Court for the District of Maryland considered whether a plaintiff's allegations that a collection attorney's contacts with a court in the context of an underlying debt collection action stated claims for which relief may be granted under 15 U.S.C. § 1692c(b). *See Deitemyer v. Ryback*, Civil Action No. ELH-18-2002, 2019 U.S. Dist. LEXIS 131164, at *27-30 (D. Md. Aug. 6, 2019). Given the procedural posture of the case and the nature of the communications, the plaintiff argued that "none of defendants' communications were reasonably necessary to effectuate a postjudgment judicial remedy." *Id.* at *28. In addressing this argument, the Court held that "in the debt collection action, defendants' contacts with the State courts were reasonably necessary precedents to reaching a postjudgment judicial remedy… [t]herefore, plaintiff's claim fails." *Id.* at *30. In so holding, the court reasoned as follows:

> In *Heintz*, 514 U.S. at 299, the Supreme Court determined that the FDCPA applies to attorneys who regularly engage in consumer-debt-collection activity, "even when that activity consists of litigation." However, the Court noted that this conclusion could result in potential anomalies under the FDCPA. *Id.* at 296. For example, § 1692c(c) prevents a debt collector from communicating with a consumer after that consumer has refused to pay the debt or directed the debt collector to cease further communication. The Court observed that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Heintz*, 514 U.S. at 296. Accordingly, the Supreme [Court] concluded that the text of 15 U.S.C. § 1692c(c) contained an "implicit, exception" for court filings. *Id.* at 296-97.
>
> In *Marino v. Nadel*, GJH-17-2116, 2018 U.S. Dist. LEXIS 166168, 2018 WL 4634150, at *3 (D. Md. Sept. 27, 2018), *aff'd*, 763 F. App'x 305 (4th Cir. 2019), Judge Hazel considered whether a "foreclosure action and related communications violate § 1692c(b) as third party communications to the court and to the public at large." In his view, *Heintz* teaches that the FDCPA's "internal exceptions should be read to avoid any resulting anomalies." *Id.* Section 1692c(b) contains an exception for communications "reasonably necessary to effectuate a postjudgment judicial remedy." Therefore, Judge Hazel concluded: "The filing of an action to foreclose is a necessary precedent to reaching a postjudgment judicial remedy, so communications with a court that are necessary to maintain that

13

> foreclosure action do not violate § 1692c(b)." *Marino*, 2018 U.S. Dist. LEXIS 166168, 2018 WL 4634150, at *3.
>
> Likewise, in the debt collection action, defendants' contacts with the State courts were reasonably necessary precedents to reaching a postjudgment judicial remedy. Therefore, plaintiff's claim fails.

*Id.* at *30. Consistent with the reasoning in *Deitemyer*, interpreting 15 U.S.C. § 1692c(b) to exclude court filings in a collection action is necessary to avoid "resulting anomalies." Furthermore, such filings should be considered as "reasonably necessary precedents to reaching a postjudgment judicial remedy." *See id.* As such, this Court should grant Buffaloe judgment on the pleadings as to Plaintiffs' § 1692c(b) claims.

**IV.  Buffaloe is entitled to judgment on the pleadings as to the FDCPA claims of Plaintiffs Stokely, Wright, and Gartin because they are barred by the statute of limitations.**

"An action to enforce any liability created by this subchapter may be brought… within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). There was previously a split of authority regarding whether FDCPA claims accrue from the date of filing of a pleading containing alleged violations or whether they accrue upon the date when the plaintiff knew or should have known of the violation. Two months ago, in an 8-1 decision, the Supreme Court of the United States resolved the split of authority by rejecting the application of the discovery rule in this context and held that an FDCPA claim accrues on the date when the alleged violation occurs (in this case, the date of filing), not on the date on which the violation is discovered. *Rotkiske v. Klemm*, 205 L. Ed. 291, 140 S. Ct. 355 (2019).[7] In so holding, the Court opined that the language of § 1692k(d) "unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Id.* at 360. "It is not our role to second-guess Congress' decision

---

[7]The Supreme Court's opinion in *Rotkiske* is in accord with this Court's past holding in *Crumel v. TCCA, Inc*., No. 3:14-CV-350, 2014 U.S. Dist. LEXIS 168230 (E.D. Tenn. Dec. 3, 2014).

14

to include a 'violation occurs' provision, rather than a discovery provision, in § 1692k(d)." *Id.* at 361.

Applying the foregoing law to this action, three Plaintiffs failed to bring suit within one year of the date on which the alleged FDCPA violations occurred. In May 2018, Defendant Buffaloe filed suits to collect from Kelly Jo Stokely, Daniel G. Wright, Jr., and Billy Joe Gartin. (*See* ECF Doc. 1-1, PageID # 31, 43, 47). Therefore, the alleged violations occurred in May 2018. The Class Action Complaint, however, was not filed until June 14, 2018. (*See* ECF Doc. 1, PageID # 1). Consequently, the FDCPA claims of Stokely, Wright, and Gartin against Defendant Buffaloe are barred by § 1692k(d). Based upon the foregoing, this Court should enter judgment on the pleadings as to these Plaintiffs' claims.

## V. Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' "chain of title" claims because, in response to Plaintiffs' counsel's informal request, Buffaloe provided "more proof," as requested.

The FDCPA contains a procedure for consumers to obtain verification of a debt by disputing the debt in writing within thirty days of delivery of the notice required by 15 U.S.C. § 1692g(a). *See* 15 U.S.C. § 1692g(b). Upon receipt of a written dispute in compliance with § 1692g(b), a debt collector must cease collection activities until the debt is verified. 15 U.S.C. § 1692g(b). "[T]he 'baseline' for verification is to enable the consumer to 'sufficiently dispute the payment obligation.'" *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014). In *Haddad*, the United States Court of Appeals for the Sixth Circuit stated that a verification consisting of an "itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective." *Id.*

Plaintiffs allege that their attorney attended the initial court hearing. (ECF Doc. 1, ¶ 26, PageID #: 6-7). At that hearing, their attorney notified Buffaloe that Plaintiffs disputed the debt. (ECF Doc. 1, ¶ 26, PageID #: 6-7). Plaintiffs do <u>not</u> allege that any dispute was submitted in

15

writing. (*See* ECF Doc. 1, ¶ 26, PageID #: 6-7). Plaintiffs' attorney requested that Buffaloe

provide him with "more proof" regarding ownership of the debts. (ECF Doc. 1, ¶ 28-29, PageID #:

7). In response to this request, Buffaloe provided Plaintiff with copies of (1) sworn affidavits of

account executed by the records custodian of FFIF VI establishing FFIF VI's ownership of the

accounts, the subject account numbers, the associated dates of service, and amounts due;[8] (2)

documents evidencing the sale of accounts, along with affidavits of authenticity; and (3) hospital

intake papers, including a signed copy of the conditions of treatment and admission, and

attachments. (ECF Doc. 1, ¶ 29-38, PageID #: 7-8).[9] Plaintiffs allege that some of these papers

did not include referenced attachments. (ECF Doc. 1, ¶ 29-38, PageID #: 7-8).

While Plaintiffs allege that their attorney notified Buffaloe at a court hearing that his

clients "disputed" the validity of the debts, they do not allege the dispute was submitted in writing

or otherwise complied with the procedure set forth in § 1692g(b). (*See* ECF Doc. 1, ¶ 26, PageID

#: 6-7). Indeed, Plaintiffs do not allege that Buffaloe violated 15 U.S.C. §§ 1692g(a) or 1692g(b).

(*See* ECF Doc. 1, ¶ 71, PageID #: 16-17). Plaintiffs' attorney requested "more proof" regarding

the dates of the medical services provided, ownership of the debts, and contracts signed by the

Plaintiffs. (ECF Doc. 1, ¶ 28, PageID #: 7). While Buffaloe provided the Plaintiffs' attorney with

"more proof," apparently, Plaintiffs' attorney wanted more "more proof." Plaintiffs do not allege

that this expectation was ever relayed to Buffaloe, or that Plaintiffs' counsel otherwise followed

---

[8] Buffaloe would show that the sworn account, alone, contains the information that the *Haddad* Court envisioned. *See* 758 F.3d at 785.

[9] Given that the Plaintiffs have put the contents of the documents at issue, Buffaloe will move to append the record to file one example of the documents that were provided in response to Plaintiffs' counsel's request. Further, because the claims are premised upon failures to provide complete documentation, and that the documentation is referred to in the pleadings, the subject documents are integral, and their attachment would not convert this motion into one for summary judgment. *See Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment").

16

up, prior to filing this action. (*See* ECF Doc. 1, PageID #: 1-30). Instead, it appears that Plaintiffs now take the position that Buffaloe's failure to read Plaintiffs' counsel's mind regarding the precise sort of "more proof" desired gives rise to liability under the FDCPA. (ECF Doc. 1, ¶¶ 29-38, 62, PageID #: 7-8, 13-14). Such a position is untenable, and this Court should grant Buffaloe judgment on the pleadings as to these claims.

**VI.** **Buffaloe is entitled to judgment on the pleadings as to Plaintiffs' FDCPA claims based upon an alleged lack of meaningful review by Buffaloe because where a sworn affidavit establishing the amount and a validity of a debt, alone, serves as a sufficient basis for filing a suit on sworn account, any expectation that an attorney conducted factual investigation beyond that is unreasonable, and cannot give rise to liability under 15 U.S.C. § 1692e.**

Plaintiffs claim that listing Buffaloe on the civil warrant gives the false impression that an attorney meaningfully reviewed underlying account documents prior to filing the underlying collection action, in violation of 15 U.S.C. §§ 1692e and 1692e(3).[10] (ECF Doc. 1, Compl. ¶ 80, PageID #: 18). Specifically, Plaintiff alleges that "Buffaloe did not possess any documents or information relating to the alleged debts showing FFIF VI could legally own the debts, that the Plaintiffs legally owe the alleged debts to FFIF VI, and what collection efforts had already been made prior to FFIF VI hiring Buffaloe to attempt collection from the Plaintiffs."[11] (ECF Doc. 1, ¶ 73, PageID #: 17). This claim should be dismissed because, where a sworn affidavit establishing the amount and a validity of a debt, alone, serves as a sufficient basis for filing a suit on sworn account, any expectation that an attorney conducted factual investigation beyond that is

---

[10] Buffaloe notes that it was *required* under Tennessee law to list its name and address on the civil warrant. *See* Tenn. Code Ann. § 20-2-101 ("The summons from a court of general sessions shall be substantially the same as the summons from a court of record…"); Tenn. R. Civ. P. 4.02 (requiring the summons from a court of record to "state the name and address of the plaintiff's attorney, if any…").

[11] As discussed below, this blanket allegation ignores that a sworn account, executed by FFIF VI's record custodian, establishing FFIF VI's ownership of the accounts, the subject account numbers, the associated dates of service, and amount due was attached to the civil warrant. (*See* ECF Doc. 1-1, PageID #: 31-48).

17

unreasonable, and cannot give rise to liability under 15 U.S.C. § 1692e.

Based on the face of the civil warrant filed in the underlying matter, it is clear that Buffaloe, at a minimum, had in its possession a sworn affidavit of its client and party plaintiff, FFIF VI, which established FFIF VI's ownership of the accounts, the subject account numbers, the associated dates of service, and amounts due. (*See* ECF Doc. 1-1, PageID #: 31-48). This, alone, is sufficient grounds upon which to file a collection action on sworn account in Tennessee.

In *Spangler v. Conrad*, the plaintiff in a FDCPA action alleged that the defendant violated 15 U.S.C. §§ 1692e & 1692f by stating an incorrect debt amount in the underlying civil warrant. No. 2:08-CV-234, 2010 WL 2389481, at *3, *5 (E.D. Tenn. June 9, 2010). The amount of the debt stated in the civil warrant corresponded to the amount set forth in the sworn account executed by a representative of the holder of the debt. *Id.* at *5. In granting summary judgment in favor of the defendant collection attorney, this Court held that a debt collection attorney may rely upon the sworn affidavit of the holder of the debt:

> The Sworn Account was an affidavit executed by Bart Howard, who was an official of some sort with First Investment Services. Mr. Howard swore before a notary public that the amount owed by Ms. Spangler was $1420.48. Whether that figure is correct or not was or will be a matter for the Sessions Court Judge to determine. It certainly is not incumbent upon a debt collection attorney to essentially recalculate interest and fees claimed by his client before sending demand letters or filing suit. To so require would place an intolerable—indeed, likely an impossible—burden upon the attorney. Calculation of interest is not necessarily a simple, straightforward matter, and the FDCPA does not require a debt collection attorney to also be a certified public accountant. Assuming that attorney Conrad has approximately the same mathematical and accounting skills as this magistrate judge, he would "investigate" the total amount owing by calling or writing his client who has the skills (and computers) to do so. Here, Conrad already had the pertinent information from an individual who presumably had the means to calculate correctly the amount owing. ***A debt collection attorney should be allowed to confidently rely upon an affidavit of Sworn Account executed by his client that sets forth the total amount owed***.

*Id.* (emphasis added). In the underlying collection actions, it is evident from the face of the pleadings that Buffaloe, at a minimum, "rel[ied] upon an affidavit of Sworn Account executed by

18

[its] client" setting forth the validity and amount of the debt in filing the action. *Id.* (*See also* ECF Doc. 1-1, PageID #: 31-48). Per this Court's holding in *Spangler*, such reliance upon the sworn affidavit is entirely sufficient and proper.

The conclusion, under Tennessee law, that a sworn affidavit, alone, is sufficient basis for filing a suit on sworn account is further evident in state statutes. The statutory procedure for prosecuting a suit on sworn account allows for a party to rely upon an affidavit (*i.e.*, a sworn account) as conclusive proof of such claim:

> (a) An account on which action is brought…with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto,… **is conclusive against the party sought to be charged**, unless that party on oath denies the account or except as allowed under subsection (b).

Tenn. Code Ann. § 24-5-107 (emphasis added).

In discussing the purpose of Tenn. Code Ann. § 24-5-107, Tennessee courts have noted as follows:

> The statute was intended to furnish an easy and inexpensive mode for collecting debts when they are justly due and no real defense exists, unless the account is denied on oath, and thus the plaintiff is put on notice to make the necessary proof. *Foster & Webb v. Scott County*, 107 Tenn. 693, 65 S.W. 22 (1901). The statute is quite clear that in the absence of a sworn denial the plaintiff is entitled to judgment on the sworn account.

*State ex rel. Finkelstein, Kern, Steinberg, and Cunningham v. Donald*, No. 02A01-9807-CH-00203, 1999 WL 236407, *4 (Tenn. Ct. App. Apr. 22, 1999). Furthermore, "[i]n the event the defendant appears at the hearing and makes the necessary denial under oath, the plaintiff cannot stand on the sworn account and must prove his or her case." *Clark Power Servs. v. Mitchell*, 2008 WL 2200047, *3 (internal citation omitted). However "[t]o prevent the plaintiff from being ambushed by the surprise appearance of the defendant at trial, the trial court is required to continue the case, upon motion of the plaintiff, until a date certain." *Id.* at *8. The statute,

19

therefore, anticipates that a suit on sworn account does not need to be proved beyond submission of an affidavit attesting to a claimant's right to recovery <u>unless and until</u> it is challenged by the defendant.  *Id*.  In such an instance the court is ***required*** to continue the matter so that the plaintiff has the opportunity to obtain any additional evidence for a contested hearing.  *Id.  See also* Tenn. Code Ann. § 24-5-107.  This implies that it is proper for an attorney to file a collection action based solely upon the sworn assertions of her client.

Additionally, under the Tennessee Collection Services Act, in a situation where an assignee is bringing suit in its own name, it may rely upon a sworn account executed by the assignor, from whom it obtained the account, to prosecute the action.  *See* Tenn. Code Ann. § 62-20-127(a)(5).  This necessarily assumes that a suit on sworn account may be initiated by a party who has <u>only</u> the sworn affidavit of the assigning party.  *See id*.  If the assignee had independent proof of the amount and validity of the debt in its possession, it would be unnecessary to seek a sworn affidavit from the assigning party.  *See id*.  As such, this code section further implies that a sworn account, alone, is a sufficient basis for filing a suit on sworn account.  *See id*.

Where possession of a sworn statement of a client, alone, is sufficient basis to initiate a suit on sworn account under state law, any expectation that an attorney would complete additional, superfluous factual investigation is unreasonable, and cannot give rise to liability under 15 U.S.C. § 1692e.  *See Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993) ("[I]n crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness"); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008) (holding that the least sophisticated consumer standard "preserv[es]a quotient of reasonableness").

Finally, "a statement must be materially false or misleading to violate [the FDCPA]."

*Wallace v. Wash. Mut. Bank, F.A*., 683 F.3d 323, 326 (6th Cir. 2012). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.,* at 326-327. Plaintiffs fail to plead how Buffaloe's objective compliance with Tenn. Code Ann. § 24-5-107 is a material misrepresentation under the FDCPA. (*See generally* ECF Doc. 1). The statute itself reflects that a sworn affidavit is conclusive proof as to the underlying debt and the debtor's liability for same. *See White, supra;* Tenn. Code Ann. § 24- 5-107. Therefore, a sworn account filed with what Plaintiffs consider to be "meaningful attorney involvement" has the same effect on a consumer as one filed without meaningful attorney involvement, and the consumer must respond the same if she wishes to overcome it. As a result, any alleged misrepresentation to the effect that an attorney was "meaningfully involved" in its filing was immaterial.

For the foregoing reasons, this Court should dismiss Plaintiffs' FDCPA claim that the listing of Buffaloe as attorney of record on the civil warrant gave a false impression of meaningful attorney involvement.

**VII.    Buffaloe is entitled to judgment on the pleadings as to all[12] claims because Plaintiffs fail to allege a concrete and particularized injury necessary to confer standing under Article III of the United States Constitution.**

Article III of the United States Constitution limits federals courts' jurisdiction to hear only actual cases and controversies. U.S. Const., Art. 3, § 2. "The doctrine of standing aids [courts] in defining these limits." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff bears the burden of establishing standing. *Summers v. Earth Island Inst*., 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009). "To satisfy the 'irreducible constitutional minimum of standing,'

---

[12] The basis for jurisdiction of the state law claims is pendant jurisdiction. Therefore, as this Court lacks jurisdiction over the FDCPA claims, so it lacks jurisdiction over the pendant claims. (ECF Doc. ¶ 3; PageID #: 2).

21

the plaintiff must establish that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed." *Lyshe*, 854 F.3d at 857 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "The existence of an abstract injury is insufficient for a plaintiff to carry his burden on this element." *Id*. (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). "Rather, a plaintiff must establish that he has a 'personal stake in the outcome of the controversy.'" *Id*. (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014)) (further internal citations omitted). "Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Id.* (internal citations omitted).

In *Spokeo*, *Inc. v. Robins,* the Supreme Court of the United States considered whether violations of federal statutory rights necessarily give rise to a concrete and particularized injury-in-fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The plaintiff had sued Spokeo alleging that it had violated the Fair Credit Reporting Act through its report of inaccurate credit information about the plaintiff. *Id.* at 1546. Specifically, in response to a third-party request for information about the plaintiff, Spokeo generated a report which indicated that plaintiff "is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," which was incorrect. *Id*. The plaintiff filed a class action complaint under the FCRA. *Id*. Spokeo argued that the plaintiff failed to allege an injury-in-fact necessary to confer standing under Article III of the United States Constitution. *Id*. The District Court dismissed the complaint for lack of jurisdiction. *Id*. The United States Court of Appeals for the Ninth Circuit reversed the District Court's ruling, holding that "because [the plaintiff] alleged that 'Spokeo violated his statutory rights, not just the statutory rights of other people,' and because his 'personal interests in the handling of *his* credit information

22

are individualized rather than collective'… the 'alleged violations of [his] statutory rights [were] sufficient to satisfy the injury in fact requirement of Article III.'" *Id.* (internal citations omitted) (emphasis in original). The Supreme Court granted *certiorari*. *Id.*

In addressing the injury-in-fact requirement, the Court noted that the Constitution "specif[ies] that [the judicial power of the United States] extends only to 'Cases' and 'Controversies,' and that '[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Spokeo*, 136 S. Ct. at 1547 (internal citations omitted). The Court's analysis focused on the injury in fact element of standing, "the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U. S. 83, 103, (1998)). Quoting *Lujan*, the Court noted that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U. S., at 560). From there, the Court focused on the particularization and concreteness requirements. *Id.*

For an injury to be "particularized," the Court noted, it "'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (internal citations omitted). While "[p]articularization is necessary to establish injury in fact… it [alone] is not sufficient." *Id.* Injuries must also be "concrete" to give rise to an injury in fact. *Id.* In the Court's view, the Ninth Circuit failed to consider concreteness. *Id.* Instead, the appellate focused on particularization: that the plaintiff's own statutory rights were violated and that his interests in the handling of his credit information were "'*individualized and not collective.*'" *Id.* (internal citations omitted) (emphasis in original).

The Court noted that, in order for an injury to be concrete, it must be "'real'" and "'not abstract.'" *Spokeo*, 136 S. Ct. at 1549 (internal citations omitted). While intangible harms can

23

satisfy the requirement of concreteness, courts should consider where such harms bear "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (internal citations omitted). While the Supreme Court had previously noted that Congress has a role in identifying intangible harms through the enactment of statutory rights, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* A "bare procedural violation" will not suffice. *Id.* The Court concluded that the Ninth Circuit's analysis was incomplete, and it vacated the court's judgment and remanded the case for further proceedings. *Id.* at 1550.

The United States Court of Appeals for the Sixth Circuit has, on four occasions, applied the *Spokeo* holding in the context of FDCPA claims.[13] In the first of those decisions, *Lyshe*, the plaintiff alleged that the collection attorney violated 15 U.S.C. § 1692e when it served discovery requests without providing electronic copies, as required by relevant procedural rules, and by stating that requests for admission must be verified under oath, which is not required. *Lyshe*, 854 F.3d at 858. The defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which the District Court granted, holding that Plaintiff failed to allege a concrete and particularized injury necessary to confer standing under Article III. *Id.* at 857.

On appeal, citing *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), the plaintiff argued that, in its passage of 15 U.S.C. § 1692e, Congress conferred upon him "a right— the right not to receive false information in collection of a debt—and [the plaintiff] suffered harm arising from that right—receiving false information about state discovery procedures." *Id.* at 860. The Sixth Circuit declined to follow *Church* "for several reasons." *Id.* First, the Sixth Circuit

---

[13] *See Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017); *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018); and *Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020).

24

noted that *Church* was unpublished, not binding, and that the Eleventh Circuit declined to follow it months later in *Nicklaw v. Citimortgage*, 839 F.3d 998 (11th Cir. 2016). *Id.* Further, the Sixth Circuit noted that the holding in *Church* went against the weight of authority in other circuits, citing to authority in the Second, Third, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits. *Id.* at 860-61. The Court held that the Plaintiff failed to allege a concrete harm, reasoning that "the sort of harm alleged by Lyshe, namely, that he would have been required to visit a notary and contact Appellees to obtain electronic copies of the discovery, was not the type of harm the FDCPA was designed to prevent." *Id.* at 859.

In *Hagy*, the plaintiffs contacted a creditor after defaulting on a loan in an effort to work out a payment plan. *Hagy v. Demers & Adams*, 882 F.3d at 618-619. In response, the creditor's attorney responded to the plaintiffs' attorney that the plaintiffs were no longer responsible for the remaining balance of the loan. *Id.* at 619. The plaintiffs then sued the creditor's attorney because his correspondence informing the plaintiffs' attorney that the plaintiffs were relieved of their payment obligation did not include the "mini-*Miranda*" language required by 15 U.S.C. § 1692e(11). *Id.* The court noted that it knew "of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Id.* at 622.

> Although Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.

*Id.* (citing *Spokeo*, 136 S. Ct. at 1548-49). The court then held that "[b]ecause Congress made no effort to show how a letter like this would create a cognizable injury in fact and because we cannot see any way in which that could be the case, we must dismiss this claim for lack of standing." *Id.* at 623.

In *Macy*, while the debt collector informed the plaintiffs in a letter that they may dispute their debts in accordance with the procedures set forth in 15 U.S.C. § 1692g, it failed to inform them that such a dispute must be submitted *in writing* in order to trigger the obligations in the provision. *Macy*, 897 F.3d at 751. In ruling on the defendant's motion to dismiss for lack of standing, the District Court held that the letters created "a 'substantial' risk that consumers would waive important protections afforded to them by the FDCPA by following [the defendant's] deficient instructions…." *Id.*

On appeal, the Sixth Circuit noted that *Spokeo* recognized two categories of statutory violations: (1) violations of a procedural right that are sufficient, alone, to constitute concrete injuries in fact because the procedural right protects concrete interests, and (2) bare procedural violations, in which case plaintiffs must allege some resulting concrete harm. *Id.* at 756. The court went on to note that the subject dispute and validation procedures set forth in § 1692g are one of the "specific consumer-protective rights" codified by the FDCPA, and cited to a holding by the United States Court of Appeals for the Second Circuit that "'[w]e have no trouble concluding that § 1692g… 'protect[s] an individual's concrete interests....'" *Id.* at 756-57 (quoting *Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. 2017). Unlike *Lyshe*, where the harm would have resulted in a trip to the notary or a phone call, the Sixth Circuit held that the violations at issue in *Macy* involve being misled about one of the specific procedural rights that the FDCPA provides consumers from "the type of harm—abusive debt collection practices— [that] the FDCPA was designed to prevent." *Id.* at 760. Based on this reasoning, the court held that the plaintiffs had sufficiently alleged a material risk of concrete harm sufficient to satisfy the requirements for standing. *Id.* at 761.

Last month, the United States Court of Appeals for the Sixth Circuit filed its opinion in *Bucholz*, a case in which the plaintiff claimed that the debt collector violated the FDCPA by

26

giving a false impression of attorney involvement, similar to the claims asserted by Plaintiffs in the instant matter. *Buchholz*, 2020 U.S. App. LEXIS 41, at \*2 (*compare with* ECF Doc. 1, ¶¶ 72-80, PageID #: 17-18). The plaintiff alleged that the debt collector, a law firm, gave the false impression that an attorney was meaningfully involved in review of his case because he received a letter from an attorney on firm letterhead. *Id.* at \*2-\*3. As a result of the alleged violations, the plaintiff alleged that he "felt an undue sense of anxiety that he would be subjected to legal action if prompt payment was not made." *Id.* at \*3. The debt collector moved to dismiss, and the District Court granted its motion, holding that the plaintiff lacked standing, among other grounds. *Id.* at \*4-\*5.

On appeal, the Sixth Circuit noted that "there are, as there must be, limits on what kinds of allegations of intangible harm satisfy Article III." *Buchholz*, 2020 U.S. App. LEXIS 41 at \*7. The court cited the United States Circuit Court for the District of Columbia's holding in *Humane Society of United States v. Babbitt* that "'general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.'" *Id.* at \*7 (*quoting Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 98, 310 U.S. App. D.C. 228 (D.C. Cir. 1995)). The court noted that the plaintiff cited "no case from this court holding that anxiety, on its own, is an injury in fact—and as best we can tell, no such case exists." *Id.* at \*11-\*12. Ultimately, the court held that, because the plaintiff was alleging a fear of future harm—a fear of being sued—he failed to establish a concrete injury. *Id.* at \*16.

In reaching this holding, the court also considered whether the violation of the subject FDCPA provisions, which prohibit the "'false representation or implication that any individual is an attorney or that any communication is from an attorney,'" by itself, constituted an injury-in-fact. *Id.* at \*22-\*31. In considering whether an intangible injury is cognizable, a court must first consider to "'whether Congress conferred the procedural right in order to protect an individual's

27

concrete interests,'" and second whether the intangible harm is analogous to a cognizable injury in the common law. *Id.* at *24-*25. As to the first consideration, the plaintiff argued that "that Congress passed the FDCPA to prevent debt collectors from engaging in abusive debt-collection practices." *Id.* at 30. "But even assuming MNT violated the statute by misrepresenting that an attorney had reviewed Buchholz's debts, we find ourselves, like we were in *Hagy*, unable to identify any harm to come from that violation." *Id.* Concerning the common law, the plaintiff did not argue that he suffered any injury that was analogous to a cognizable injury under the common law, "[n]or could he." *Id.* at 30-31.

In the instant matter, outside of the FDCPA claims which are derivative of the alleged PPPA violations, Plaintiffs have not alleged the existence of <u>any</u> injuries resulting from the alleged FDCPA violations, let alone the sort of concrete and particularized injuries that are necessary to satisfy the injury-in-fact requirement of standing. (*See generally* ECF Doc. 1, PageID #: 1-30). Outside of a generic reference to "actual damages" in paragraph 120, Plaintiffs do not offer any explanation of how they were injured as a result of the alleged violations. (*See generally* ECF Doc. 1, PageID #: 1-30). Even as to those claims which are derivative of the PPPA claims, Plaintiffs simply allege that they suffered "emotional harm" for being subject to otherwise standard debt collection efforts that are alleged to violate the PPPA. (ECF Doc. 1, ¶ 125, PageID #: 28). In general, as to <u>all</u> of their FDCPA claims, Plaintiffs' failure to even attempt to articulate concrete and particularized injuries are fatal to their standing under Article III.

### Chain of Title

As to the chain of title claims, it appears that Plaintiffs claim that they were injured because they were not provided certain documents in response to their attorney's informal and general request for "more proof" concerning the "date of the medical services received, proof of ownership of the alleged debt, including any contracts signed by Plaintiffs." (ECF Doc. 1, ¶¶ 28,

28

62 PageID #: 7, 13-14). Buffaloe provided documents in response to this request. (ECF Doc. 1, ¶¶ 28, 62 PageID #: 7, 13-14). Plaintiffs apparently hoped to receive more or different documents in addition to what was received, and it is unclear from the allegations whether Plaintiffs' counsel followed up with Buffaloe to clarify these expectations. (ECF Doc. 1, ¶¶ 27-40, 62 PageID #: 7-9, 13-14). Plaintiffs assert that the failure to provide Plaintiffs with certain documents in response to a request for more proof constitutes violations of various provisions[14] of 15 U.S.C. § 1692e and 1692f. (ECF Doc. 1, ¶, 62 PageID #: 13-14). Plaintiffs fail to articulate any concrete injury that resulted from Buffaloe failing to meet its expectations in its response to their informal request for documents. (ECF Doc. 1, ¶¶ 62, 118-120, PageID #: 13-14, 26-27). As in *Lyshe*, where the Court found it difficult to find a concrete injury where the alleged failure would have resulted in a trip to a notary or a call to Plaintiffs' counsel, the alleged violation here could have been remedied by a call to Buffaloe. *See Lyshe v. Levy*, 854 F.3d at 85. No concrete injury is alleged to have occurred, and no hypothetical injury can be conjured. As such, Plaintiffs fail to allege a concrete injury-in-fact necessary to confer standing.

### *Lack of Meaningful Attorney Review*

In *Bucholz*, the United States Court of Appeals for the Sixth Circuit considered whether the FDCPA provision that prohibits a "false representation or implication that any individual is an attorney or that any communication is from an attorney," alone, gives rise to an injury and concluded that it did not. *Buchholz*, 2020 U.S. App. LEXIS 41 at *24-*30. Plaintiffs have asserted similar claims under the same provision, alleging that, when Buffaloe filed its lawsuit, the least sophisticated consumer would have implicitly, but incorrectly, believed that Buffaloe had more than just a sworn account in its possession and that it had reviewed such documents. (ECF

---

[14] 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).

Doc. 1, ¶¶ 72-80, PageID #: 17-18). Unlike Bucholz, however, Plaintiffs do not even attempt to formulate how a mistaken understanding injured them. (ECF Doc. 1, ¶¶ 72-80, 118-120, PageID #: 17-18, 26-27). Furthermore, as noted in § VI, *supra*, where a Tennessee attorney can file a collection action based on a sworn account, alone, it is hard to understand how a party could be injured by holding a mistaken belief to the contrary.

For these reasons, Plaintiffs have not satisfied the injury-in-fact element necessary to confer standing under Article III of the United States Constitution, and this Court lacks subject matter jurisdiction.

## CONCLUSION

For the forgoing reasons, Buffaloe is entitled to judgement on the pleadings as to all claims asserted against it.

Dated February 12, 2020.

                        */s/ Christopher Field*
                        Gregory Brown [BPR # 027944]
                        Christopher C. Field [BPR # 028070
                        LOWE YEAGER & BROWN PLLC
                        900 S. Gay St., Ste. 2102
                        Knoxville, TN 37902
                        (865) 521-6527
                        *Attorneys for Buffaloe & Vallejo, PLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                        */s/ Christopher Field*
                        Christopher Field

4814-9370-7695, v. 9